Borough of Aliquippa and Westmoreland Casualty
Company, Insurance Carrier, Appellants, *v.*
Workmen's Compensation Appeal Board and
Angelo Mansuetti, Appellees.

Argued March 6, 1975, before Judges CRUMLISH, JR.,
KRAMER and ROGERS, sitting as a panel of three.

*H. Reginald Belden,* with him *Marcia Belden Lappas,*
and *Stewart, Belden, Sensenich and Herrington,* for ap-
pellants.

*Alexander J. Pentecost,* with him *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE KRAMER, April 15, 1975:

This is an appeal by the Borough of Aliquippa and Westmoreland Casualty Company (hereinafter collectively referred to as the Borough) from an order of the Workmen's Compensation Appeal Board (Board), dated January 31, 1974, which affirmed the referee's award of compensation to Angelo Mansuetti (Mansuetti).

Mansuetti was employed by the Borough as a policeman for over 20 years, until April 8, 1971, when he suffered a heart attack while attempting to break up a gang fight involving 40 to 60 teenagers. The record indicates that during the gang fight Mansuetti was struck from behind, that he then wrestled with one individual for approximately 10 minutes, and that after that individual broke loose, Mansuetti pursued him on foot. During the pursuit Mansuetti suffered his heart attack.[1]

Mansuetti filed a claim for workmen's compensation on December 9, 1971, and three hearings were eventually held before a referee. The only testimony presented at these hearings was by Mansuetti, a medical witness on behalf of Mansuetti and a medical witness on behalf of the Borough. On September 19, 1973, the referee filed his decision in which he found that Mansuetti's heart attack was caused by "extreme emotional and physical stress," and in which he awarded compensation after concluding that Mansuetti had met his burden of proving a compensable accident.[2] The Borough appealed to the

_____

1. Since his heart attack Mansuetti has been receiving his full salary pursuant to the provisions of the Act of June 28, 1935, P.L. 477, §1, *as amended,* 53 P.S. §637 (known as the Heart and Lung Act).

2. Mansuetti's heart attack occurred prior to the recent amendments to the Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P. L. 736, *as amended,* 77 P.S. §1

Board which affirmed the referee's decision on January 31, 1974.

In its appeal to this Court the Borough contends (1) that the referee's finding that an accident had occurred in the course of Mansuetti's employment is not supported by substantial evidence; (2) that Mansuetti's present disability is not causally related to his heart attack; and (3) that Mansuetti is not entitled to compensation for total disability because the record only supports a finding of partial disability.

In a case such as this where the party with the burden of proof has prevailed before the referee and the Board has taken no additional evidence, our scope of review is limited to a determination of whether or not constitutional rights were violated, an error of law was committed, or any necessary findings of fact, as found by the referee, were unsupported by substantial evidence. Judgments concerning the credibility of witnesses are for the referee rather than the Board or this Court. *See Reed v. Glidden,* 13 Pa. Commonwealth Ct. 343, 318 A. 2d 376 (1974).

The Borough's first argument in its appeal is that Mansuetti suffered his heart attack while doing his usual work in the usual manner and that, therefore, the referee's finding of a compensable accident is not supported by substantial evidence. This argument has no merit because there is testimony in the record which is more than adequate to support the referee's findings that the heart attack was caused by "extreme emotional and physical stress." The unusual strain doctrine is applicable to a case such as this, and the doctrine must be applied according to the work history of the individual involved and not the work pattern of his profession in general. *See Hamilton v. Procon,* 434 Pa. 90, 252 A.2d 601 (1969).

---

et seq. The Act now applies to "injuries" in the course of employment rather than "accidents" in the course of employment. *See* section 101 of the Act, 77 P.S. §101 (Supp. 1974-1975).

Mansuetti's uncontradicted testimony in this case clearly indicates that the attempt to break up the gang fight involving 40 to 60 individuals was outside his normal work pattern.[3] The fact that breaking up such a fight might be within the normal work pattern of other policemen is not relevant. *See Hamilton v. Procon, supra; DeEsch v. Emmaus Borough,* 143 Pa. Superior Ct. 225, 18 A. 2d 80 (1940).

The Borough's second contention is that Mansuetti's present disability is not causally related to his heart attack but rather is due to a preexisting coronary condition. The record simply does not support this contention. The record reveals that Mansuetti was treated for a preexisting coronary condition, but that his physician did not advise him to quit work or to curtail his activities.[4] But for the unusual strain involved in breaking up the gang fight and his subsequent heart attack, Mansuetti might still be working today. The mere fact that Mansuetti had a preexisting coronary condition is not, in itself, sufficient to make him ineligible for compensation. *See Hamilton v. Procon, supra.*

The Borough's argument that the record only supports a finding of partial disability is also without merit. The Borough's own medical witness indicated that Mansuetti might be able to do sedentary work, but he also stated that, considering all the factors involved, he might very well recommend that Mansuetti not return to any type of work at all.

---

3. Mansuetti testified that during his 20 years as a police officer he had never been called upon to break up a fight involving more than two persons.

4. Mansuetti's condition was diagnosed by his physician as "hypertension" and "arthcrosclerotic heart disease with angina of effort" (hardening of the arteries with pain caused by overexertion). The referee noted in his findings that such a condition is not uncommon among middle-aged men and that such a condition merely makes one a "candidate" for a heart attack.

In summary we conclude that all of the findings of the referee are supported by substantial evidence and the Board's award of compensation must be affirmed. We therefore

ORDER

AND NOW, this 15th day of April, 1975, the Borough of Aliquippa and/or its insurance carrier, Westmoreland Casualty Company, are directed to pay the claimant, Angelo Mansuetti, compensation at the rate of $60.00 per week, commencing on April 9, 1971, continuing to the present and into the future until such time that disability changes in nature or extent or ceases and terminates. Interest at six percent per annum is payable in accordance with the Act. The Borough of Aliquippa is subrogated to receive the weekly compensation payable under this award for each week since April 9, 1971 that it has paid Angelo Mansuetti his salary. The Borough of Aliquippa and/or its insurance carrier, Westmoreland Casualty Company, are further directed to pay the following hospital and medical bills:

Aliquippa Hospital
1500 Hospital Drive
Aliquippa, Pennsylvania 15001 . . . . . . . . $2,141.90
Duiolo D. Piroli, M. D.
3000 McMinn
Aliquippa, Pennsylvania 15001 . . . . . . . .    415.00
Hoffman's Drug Store
534 Franklin Avenue, P. O. Box 429
Aliquippa, Pennsylvania 15001 . . . . . . . .    208.95