In the Matter of the Claims of Gloriane **YOST** and Scott Yost, Widow and Son of Gale A. Yost, Appellants (Claimants),

v.

**WYOMING STATE TREASURER ex rel. WYOMING WORKER'S COMPENSATION DIVISION, Appellee (Objector-Defendant).**

No. 5721.

Supreme Court of Wyoming.

Dec. 2, 1982.

R. Douglas Dumbrill of Hughes & Dumbrill, Sundance, for appellants.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Senior Asst. Atty. Gen., Carl Hildebrand, Asst. Atty. Gen., and Steven R. Czoschke, Legal Intern, Cheyenne, for appellee.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

The issue in this case asks whether the fatal heart attack suffered by worker Gale Allen Yost is compensable under the Wyoming Worker's Compensation Act, §§ 27–12–101 through 27–12–805, W.S.1977. We will hold that it was, thereby reversing the trial court.

## FACTS

Gale Allen Yost was a truck driver who, during the period of time that he was employed by S & S Trucking, Inc., suffered a serious, nonfatal heart attack. The precise time or place of this first attack is not known, but the medical testimony was that it occurred two days to two weeks prior to death.

Subsequently, on August 12, 1981, Yost rode to work with Donald Collins and complained to him that he felt as though he had been up all night even though that was not the case. Mr. Yost began work at about 7:00 a.m., and throughout the morning his fellow workers noticed that he appeared sickly and was complaining that he did not feel well. Shortly after work began, Stanley Bevier loaded Yost's truck at the bentonite pit and it was then that Yost said to Bevier, "I ache all over. I just don't feel good." Yost thought he might be coming down with the flu.

Approximately one half hour or 45 minutes before his death, Yost's truck became stuck on the pile where bentonite was unloaded. While he waited for a tractor to push him out he sat in a truck with Mr. Coyle for approximately one half hour. Coyle testified that while they were waiting, Yost complained of heartburn and appeared pale. It was then that Yost asked Coyle for some Rolaids but Coyle did not have any.

At about 9:00 a.m., Gale Yost walked into the Colony Truck Stop, asked for something for an upset stomach and was given an antacid tablet. He took the tablet, sat down on a davenport and immediately slumped down, unconscious. He had no pulse or respiration, and all efforts to revive him failed.

At the trial, the uncontroverted expert testimony was that the cause of death was a complication of the heart attack Yost had suffered two days to two weeks earlier. Relying on the autopsy report by Dr. Bloemendaal, an expert pathologist, and the testimony of the witnesses about the work conditions and the sudden nature of the death, Dr. Said gave his opinion as follows:

"* * * I think that he had suffered the heart attack before, which I have stated could be two days to two weeks, and probably his size of the infarction increased because they mentioned in the autopsy he had an acute inflammatory reaction and this, of course, could be caused by the exertion, by the stress-contributing factors and so on. However,

those activities he had mostly provoked more demand to the heart, more oxygen demand, and just the artery could not deliver that demand, could not deliver adequate amount of oxygen. This caused arrhythmia and ventricular fibrillation and death, which just in a few minutes you will be gone."

Dr. Said further said:

" * * * [T]his extension of the heart and because of the exertion he had, because he should have been having bed rest, this was further demand to the oxygen for the myocardium, and he could not just deliver that oxygen and he collapsed."

Dr. Said stated the reason Yost's work activity was damaging:

"You see, that's the main thing, is just rest. It is absolutely essential to allow that area time because the other arteries have to carry the load of all the blood to the heart, you see. So if we make more active then the heart will demand more oxygen and the heart cannot carry further blood so he will go into failure, into complications."

Dr. Said went on to say:

"Well, physical exertion, the main thing it is increasing the demand on the heart, and in this particular case, which was critical, was rest, the reason because of the coronary artery occlusion, which was complete. Then the blood has to go through the other artery which was not narrowed to ten to thirty percent. So, he had really a very compromised heart, and he really had to rest, not to increase the demand to his heart."

Dr. Said also gave his opinion as to what is normal or usual activity for a person who has had a heart attack within the preceding two weeks by stating:

" * * * As I told you, this takes, the scar which forms in the heart, it takes about two months to heal, and there is absolutely no normal activity during that time, no matter even if it was the smallest heart attack, let alone if it is a big anterior with complications—probably takes longer."

It was Dr. Said's opinion that the heart attack Gale Yost suffered two days to two weeks before his death caused an occlusion of the right coronary artery. The two coronary arteries on the left side of the heart were previously narrowed by atherosclerosis. After the heart attack the arteries on the left were supplying the oxygen demand of the entire heart. This condition was described by the doctor as a "very compromised heart," requiring rest, oxygen and medication to avoid fatal arrhythmia. The effect of continued work was a very big factor in producing the arrhythmia that caused Yost's sudden death.

In sum, for purposes of this opinion, we have a truck driver with a serious heart attack two days to two weeks before a fatal attack which occurred while the deceased worker was discharging his truck-driving duties for his employer. Additionally, we have expert testimony to the effect that

(a) the continued work exertion after the first heart attack was a big factor in causing the second;

(b) that there is "no normal [work] activity" during the period immediately following the first heart attack "no matter even if it was the smallest heart attack, let alone if it is a big anterior with complications" (as was the case with Mr. Yost's first attack).

OPINION

The State candidly admits in argument that this appeal is brought so that we will have a vehicle with which to overrule our unanimous decision in *Wyoming State Treasurer, ex rel. Wyoming Worker's Compensation Division v. Schwilke*, Wyo., 649 P.2d 218 (1982).

This we decline to do. We will reverse the decision of the district court in this case with recognition that the trial judge did not have the guidance of the *Schwilke* decision, supra, when he rendered his decision denying worker's compensation benefits to Yost's survivors although the State of Wyoming did have the benefit of that decision when the case was argued before this court.

The rule of *Schwilke* is good law, supported by modern worker's compensation authority and we will not upset it in a case that was argued less than six weeks after the publication of the *Schwilke* decision.

In *Schwilke* we had an almost identical set of facts to those we have here. If anything, the facts in this case are stronger and more clear-cut with respect to the application of the appropriate rule.

At the outset, the statute upon which the State relies in seeking denial of worker's compensation benefits is § 27–12–603(b), W.S.1977, which provides:

"Benefits for employment-related coronary conditions except those directly and solely caused by an injury or disease are not payable unless the employee establishes by competent medical authority that there is a direct causal connection between the condition under which the work was performed and the cardiac condition, *and then only if the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, employees in that particular employment,* and further that the acute symptoms of the cardiac condition are clearly manifested not later than four (4) hours after the alleged causative exertion." (Emphasis added.)

It is said that there is no evidence that "causative exertion" occurred during a period of "employment stress" which was

"* * * clearly unusual to, or abnormal for, employees in that particular employment, * * *." § 27–12–603(b), supra.

This argument would have us ignore or hold insufficient the doctor's testimony that once the first heart attack occurs, there is no such thing—*for this individual*—as "normal [work] activity," i.e.,

"* * * there is absolutely no normal [work] activity during that time, * * *."

In *Schwilke* we said, in response to the identical argument that the State makes here:

"*Likewise, we are of the opinion that the circumstances of this case establish that the stressful work condition was unusual to, or abnormal for the deceased's employment. Notwithstanding the fact that the actual physical exertion performed by Mr. Schwilke was within the realm of his normal activity, the record reflects that prior to the performance of these tasks he had experienced heart trouble. Under such circumstances, the once normal activity of his work day indeed became very unusual and abnormal for Mr. Schwilke.*" (Emphasis added.) 649 P.2d at 222.

We established this rule for Wyoming in heart-attack cases based on adequate and, we believe, the best reasoned authority. To start with, we were, in *Schwilke,* merely reiterating the same concept as that which we had previously recognized in *Mor, Inc. v. Haverlock,* Wyo., 566 P.2d 219, 222 (1977), when we said:

"It should be emphasized, however, that the exertion in question *must only be unusual to the employee*—it need not necessarily be unusual to others engaged in the same employment. *Herbert v. Sharp Brothers Contracting Co.,* Mo.App., 467 S.W.2d 105, 108. See also, *Commercial Transfer Company v. Quasny,* 245 Md. 572, 227 A.2d 20, 24." (Emphasis added.)

Other courts and text writers have adopted positions consistent with the rule of *Schwilke.* See 1B Larson's Workmen's Compensation Law § 38.64(c), p. 199, 1979 ed., where the author says:

"* * * [I]f, as many jurisdictions have done, the 'accidental' is identified with the 'unusual,' then it is a simple matter to go on and say that it is most unusual for a man in the throes of a heart attack to go on exerting himself. Something like this appears to have been in the mind of the New Jersey Supreme Court when it said [in *Aladits v. Simmons Co.,* 47 N.J. 115, 219 A.2d 517 (1966)]: 'If . . . a heart attack was ongoing . . . it becomes obvious that when Aladits resumed his loading endeavors, the strain involved *in terms of impact on him* was no longer the usual one.' Although the exertions may have been the same, the man, so to speak, was now different. He was now a man undergoing a heart attack; and the usual

exertions for the healthy man become transformed into unusual exertions for the stricken man." (Emphasis in text.)

In *Aladits v. Simmons Co.,* 47 N.J. 115, 219 A.2d 517 (1966), the deceased, a healthy man in heavy work, had complained to his daughter at 10:00 a.m. that he did not feel well and was going to seek permission to go home but died of a heart attack a few hours later while working and before he contacted his superiors for permission to leave the work place. The court, in upholding the compensation award, said:

"The doctor opined that the work decedent did on the morning of January 25, 1960 was a major contributing factor in initiating the coronary attack. On the basis of the daughter's testimony he felt the attack started about 10:00 A.M. when Aladits told her he was not feeling well. And in the doctor's judgment continuance of the heavy type of physical exertion in loading the trucks increased the severity of the attack to the extent that it resulted in death. In sum his view was that the cumulative effect of the work effort before 10:00 A.M. initiated the heart attack and continuance of the effort thereafter increased its extent and severity to the point of fatality." 219 A.2d at 520.

The court goes on to say:

" * * * [W]hen a specialist in internal medicine after considering the complaint in the context of the collapse opines that Aladits was probably undergoing a heart attack at about 10:00 A.M., his statement has rational evidentiary capacity. If the doctor's view is accepted that a heart attack was ongoing at 10:00 A.M., and on all the facts we cannot say the opinion is unreasonable and should not be accepted, *it becomes obvious that when Aladits resumed his loading endeavors, the strain involved in terms of impact on him was no longer the usual one.* As the doctor indicated it was too great for his condition to withstand; so it intensified the heart attack as he continued his work to the point where the collapse and death ensued. In our judgment this is a rationally acceptable conclusion." (Emphasis added.) 219 A.2d at 521.

In *Thornton v. Alaska Workmen's Compensation Board,* Alaska, 411 P.2d 209 (1966), the worker was in the throes of a heart infarction process for eight hours before death. Immediately prior to his death, he climbed a high tower and lifted a block and tackle after him. The Supreme Court, in overruling the trial court's denial of the award, relied upon the doctor's testimony. The court said:

"Dr. Marrow testified that under the circumstances relating to Thornton's climbing the tower and pulling the block and tackle up after him, and to his pre-existing heart disease, that the exertion that Thornton had undergone just prior to his death accelerated his death, that sudden exertion is notoriously detrimental to heart disease, and that it would be reasonable to expect that even with an infarcted area such as Thornton had, there would be an acceleration of the time of death by reason of the climb to the top of the tower." 411 P.2d at 410–411.

Thus, the court held that the death was work-connected and hastened by a man with a pre-existing heart disease doing the work that he ordinarily did.

In *Hanna v. Post & Brown Well Service,* 199 Kan. 757, 433 P.2d 356, 362 (1967) the immediate cause of death was myocardial infarction due to coronary occlusion evolving from arteriosclerotic heart disease of several years' duration. The court said:

"If a workman's existing physical condition, whatever it may be, gives way under the stress of his usual labor, his death is an accident which arises out of his employment. In *Gilliland v. Ash Grove Lime & Portland Cement Co.,* 104 Kan. 771, 180 P. 793, it was stated, ' "An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health." ' (104 Kan. p. 776, 180 P. p. 795.)"

In *City and County of Denver v. Industrial Commission,* Colo., 579 P.2d 80, 82 (1978) the relevant statute provided:

" ' "Accident" or "injury" shall not be construed to include disability or death caused by heart attack unless it is shown by competent evidence that such heart attack was proximately caused by an unusual or extraordinary overexertion arising out of and within the course of the employment.' "

The police officer with a history of prior heart condition had a cardiac arrest while performing what is ordinary duty for police officers—investigating an armed robbery. The Colorado Supreme Court, citing, among other authorities, *Mor, Inc. v. Haverlock,* Wyo., 566 P.2d 219 (1977), said:

"We also hold that unusual or extraordinary overexertion, as used in section 8–41–108(2), does not require that the work causing the attack be different in nature from the employee's usual work. The unusual overexertion doctrine must be applied according to the employee's work history rather than the work patterns of his profession in general. *Blood v. Industrial Comm.,* 165 Colo. 532, 440 P.2d 775 (1968). See also *Schecter* [*v. State Ins. Fund,* 6 N.Y.2d 506, 190 N.Y.S.2d 656, 160 N.E.2d 901 (1959)], supra; *Hamilton v. Procon,* 434 Pa. 90, 252 A.2d 601 (1969); *McWhorter* [*v. South Carolina Dept. of Insurance,* 252 S.C. 90, 165 S.E.2d 365 (1969)], supra; *Mor, Inc. v. Haverlock,* 566 P.2d 219 (Wyo.1977)." 579 P.2d at 82–83.

Again, in *Borough of Aliquippa v. Workmen's Compensation Appeal, Board,* 18 Pa. Cmwlth. 340, 336 A.2d 450, 452 (1975), the court held that the unusual-strain doctrine must be applied according to the work history and condition of the individual. In this case the police officer had a preexisting heart condition and suffered the attack for which he claims compensation while breaking up a fight and pursuing one of the combatants. The court said:

"The unusual strain doctrine is applicable to a case such as this, and the doctrine must be applied according to the work history of the individual involved and not the work pattern of his profession in general. See *Hamilton v. Procon,* 434 Pa. 90, 252 A.2d 601 (1969)."

■ The conclusion that must be drawn from *Schwilke* and supporting cases is that facts which show that a worker who has suffered a heart attack, and who thereafter experiences a second incapacitating attack while in the course of his employment and while doing what would otherwise be considered his usual work tasks, will be regarded as having satisfied that part of the Wyoming Worker's Compensation statute (§ 27–12–603(b)) which provides that such a worker will be eligible for compensation benefits only if

" * * * the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, employees in that particular employment, * * * "

In this case, the worker had experienced a prior heart attack, after which the doctor said there was absolutely no "normal [work] activity" during the two-month period it would take to heal the original wound.

■ For *this* heart-attack victim, the otherwise usual and normal employment stress became "unusual" and "abnormal" within the contemplation of the statute.

Reversed, with directions that judgment be entered in favor of the claimants.

ROONEY, Justice, dissenting, with whom RAPER, Justice, joins.

I dissent. I believe the majority opinion is reading into § 27–12–603(b), W.S.1977, something exactly contrary to that which it says. Such section provides:

"(b) Benefits for employment-related coronary conditions except those directly and solely caused by an injury or disease are not payable unless the employee establishes by competent medical authority that there is a direct causal connection between the condition under which the work was performed and the cardiac condition, and then only if the causative exertion occurs during the actual period of employment *stress clearly unusual to, or abnormal for, employees in that particular employment,* and further that the acute symptoms of the cardiac condition

are clearly manifested not later than four (4) hours after the alleged causative exertion." (Emphasis added.)

The majority opinion would have the emphasized words read stress clearly unusual to, or abnormal for, *this* employee in *his* particular employment. We cannot invade the legislative prerogative in that fashion. In construing a statute, its words and phrases must be given their plain, ordinary and usual meanings. *Jahn v. Burns,* Wyo., 593 P.2d 828 (1979); *Belco Petroleum Corporation v. State Board of Equalization,* Wyo., 587 P.2d 204 (1978); *Geraud v. Schrader,* Wyo., 531 P.2d 872, cert. denied 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975). The language of § 27–12–603(b) is plain and specific in directing that the required unusual or abnormal employment stress be to, or for, "employees in that particular employment." These words cannot be twisted to require the stress to be to, or for, the particular individual who has personal attributes or shortcomings which make his stress different from that of the other "employees in that particular employment."

The majority opinion predicates its interpretation of the statute on language contained in *Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division v. Schwilke,* Wyo., 649 P.2d 218 (1982) (hereinafter referred to as *Schwilke*). In analyzing that language, two things must be kept in mind.

First, the mandate in § 27–12–603(b), supra, relative to this point is in two distinct areas: (1) there must be "a direct causal connection between the condition under which the work was performed and the cardiac condition," and (2) "then only if the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, employees in that particular employment." The causal connection between the work and the cardiac condition *can* depend upon the particular individual's attributes or shortcomings inasmuch as a "cardiac condition" can vary with differences in work capacity and physical makeup between individuals, but the "then

only" clause sets forth a requirement that the exertion occur with "employment stress clearly unusual to, or abnormal for, employees in that particular employment." This requirement cannot be individualized by virtue of its very terms. The two areas are often improperly entwined by courts in addressing the problem.

Second, our position as an appellate court must not be forgotten. Findings of fact by the trial court must be upheld if supported by substantial evidence.

" * * * We are also mindful that the worker's compensation law should be liberally construed where reasonably possible so that industry and not the individual worker should bear the burden of injuries suffered under its coverage. [Citation.] *We are, however, not free under the guise of liberal construction to extend the beneficial purposes of the compensation law to injuries that do not reasonably fall within the language employed by the legislature.* [Citations.]" (Emphasis added.) *Mor, Inc. v. Haverlock,* Wyo., 566 P.2d 219, 222 (1977) (hereinafter referred to as *Mor*). See *Matter of Haynie,* Wyo., 592 P.2d 693 (1979).

" * * * On appeal we assume the evidence in favor of the successful party is true and leave out of consideration entirely the evidence presented by the unsuccessful party in conflict therewith, and we give the evidence of the successful party every reasonable inference that may be reasonably drawn from it. * * * " *Distad v. Cubin,* Wyo., 633 P.2d 167, 180 (1981); *Brittain v. Booth,* Wyo., 601 P.2d 532, 535 (1979).

Turning, then, to *Schwilke,* we find a recognition that the findings of fact of the trial court must be sustained if based on substantial evidence, and that an analysis of the evidence reflected sufficient medical testimony to sustain the finding of the causative factor. The record also contained sufficient evidence to support the finding that the stress was "unusual to, or abnormal for, employees in that particular employment." The trial court specifically stated that the award was based on emo-

tional and mental stress and not only on the physical activity of the claimant. The claimant had just completed a non-stop emergency trip, driving a truck from Casper to Oklahoma. He spent the night there and again drove twenty hours non-stop to Casper. He drove 1,968 miles in the two days and exceeded the driving time limit authorized by the department of transportation. Also, his truck was having so many mechanical problems that the employer was considering legal action against the manufacturer. There was testimony concerning Schwilke's exhaustion and of his agitation over the mechanical problems of the truck. His employer testified that the trip to Oklahoma was unusual for his drivers and that the truck trouble was unusual. The evidence was sufficient to support the finding of the trial court that Schwilke was in a "period of employment stress clearly unusual to, or abnormal for, employees in that particular employment" when the causative exertion occurred.

In the next to last paragraph in *Schwilke,* 649 P.2d at 222–223, we did say:

"Likewise, we are of the opinion that the circumstances of this case establish that the stressful work condition was unusual to, or abnormal for the deceased's employment. Notwithstanding the fact that the actual physical exertion performed by Mr. Schwilke was within the realm of his normal activity, the record reflects that prior to the performance of these tasks he had experienced heart trouble. Under such circumstances, the once normal activity of his work day indeed became very unusual and abnormal for Mr. Schwilke. Under *Mor, Inc. v. Haverlock,* supra, 566 P.2d at 222, this is all that need be proven. Other courts have also taken a similar stance—namely, that a normal activity can become unusual after the individual has previously experienced heart-attack symptoms. See: 1B Larson's Workmen's Compensation Law, § 38.64(c) (1980 ed.); *Thornton v. Alaska Workmen's Compensation Board,* Alaska, 411 P.2d 209 (1966); *Hanna v. Post & Brown*

*Well Service,* 199 Kan. 757, 433 P.2d 356 (1967); *Aladits v. Simmons Co.,* 47 N.J. 115, 219 A.2d 517 (1966) and other cases cited therein."

To the extent that such language holds that the employment stress must be unusual to, or abnormal for, the individual himself, rather than "unusual to, or abnormal for, employees in that particular employment," I would overrule. As indicated, the result in *Schwilke* was proper, but not on the basis that the employment stress was unusual to, or abnormal for, Schwilke. Such was unusual to, or abnormal for, *employees* in that particular employment. In *Schwilke,* we did no more than acknowledge the existence of substantial evidence to support the findings of the trial court.

Three of the cases cited in the foregoing citation from *Schwilke,* supra, are three of the cases summarized and quoted from in the majority opinion. In *Mor,* supra, 566 P.2d at 221, (another of the cases cited in the majority opinion) we stated that "Wyoming has clearly adopted the unusual-exertion rule for coronary-condition cases."[1] Yet none of the three cases cited in *Schwilke* and quoted in the majority opinion are from jurisdictions which have adopted such rule, and they concern only the area of causal connection. They do not address the area of "unusual to, or abnormal for, employees." The thrust in each of them was in the causal connection area, i.e., to establish the proposition that causal connection between work exertion and a cardiac condition could exist if an already existing heart irregularity were aggravated or accelerated. With reference to these three cases, the following is noted:

In *Aladits v. Simmons Co.,* 47 N.J. 115, 219 A.2d 517, 522 (1966), the New Jersey court reviewed the evidence as it bore on such causal connection and concluded that the employment strain "in reasonable probability contributed in substantial measure to his fatal coronary incident." It addressed the causal connection area only. In cataloging New Jersey with the jurisdic-

---

1. *Mor* is analyzed in more detail infra.

tions once adopting the usual rather than the Wyoming unusual-exertion rule, Larson says:

"The displacement of the unusual-exertion requirement in New Jersey by an essentially causal test came about in several stages over a ten-year period. In 1952 the need for unusual exertion was eliminated in all but 'heart cases.' In 1958 it was eliminated in 'heart cases.' In 1962 the new test of causal relation was confirmed, and refined somewhat by emphasis on the necessity for a causal contribution by the employment greater than de minimis." 1B Larson's Workmen's Compensation Law, § 38.64(b), p. 7–185.

At the time the New Jersey case was decided, the usual-exertion rule was followed. The case is not pertinent to Wyoming law.

In *Hanna v. Post & Brown Well Service,* 199 Kan. 757, 433 P.2d 356 (1967), the Kansas court stated at page 357:

"The issue on appeal is whether there is substantial evidence to support the trial court's findings that there was a causal connection between the decedent's work and his death * * *."

It did not address the area of "unusual to, or abnormal for, employees." At the time, Kansas was one of the states adopting the usual rather than the unusual-exertion rule. The court directed its inquiry to:

"The crucial question * * * [of] whether the decedent's work served to aggravate or accelerate an existing disease, intensify the afflication [sic], or contribute to the death of the workman. * * * " 433 P.2d at 363.

Larson, supra, footnoted § 38.30 of his treatise at page 7–83, that Kansas has now changed to a form of the unusual-exertion rule by statute. See: K.S.A.1981, 44–501, infra. The case is not pertinent to Wyoming law.

In *Thornton v. Alaska Workmen's Compensation Board,* Alaska, 411 P.2d 209, 210 (1966), the Alaska court stated that:

" * * * The question for us to decide is whether in the light of the whole record that finding [that the death was not

work-connected—that it was not connected with any of the incidents of his employment] is supported by substantial evidence. * * * " (Bracketed material added.)

The court's concern was with causal connection between the worker's death and his work so as to apply the statute which provided for compensation for "accidental * * death arising out of and in the course of employment * * *." Alaska Stat., § 23.30.-265(13). It did not address the area of "unusual to, or abnormal for, employees" requirement. Again, Alaska applies the usual rather than the Wyoming unusual-exertion rule. Larson, supra, § 38.30, page 7–49.

The majority opinion quotes from two additional cases. They do require "unusual" exertion, but again consider only the causal aspect of the issue. In neither jurisdiction does the statute contain language similar to the Wyoming language requiring "stress unusual to, or abnormal for, *employees in that particular employment.*"

The statute, § 8–41–108(2), C.R.S.1973, interpreted and applied in *City and County of Denver v. Industrial Commission,* 195 Colo. 431, 579 P.2d 80 (1978), reads:

"(2) 'Accident' or 'injury' shall not be construed to include disability or death caused by heart attack unless it is shown by competent evidence that such heart attack was proximately caused by an unusual or extraordinary overexertion arising out of and within the course of the employment."

Section 411, Title 77, Pa.Stat.Ann. (1981 P.P.) (Purdon), to which *Borough of Aliquippa v. Workmen's Compensation Appeal Board,* 18 Pa.Cmwlth. 340, 336 A.2d 450 (1975) pertains, provides in pertinent part:

"(1) The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe [sic], *regardless of his previous condition,* arising in the course of his employment and related thereto * * *." (Emphasis added.)

In *Schwilke,* we also quoted from the four most recent instances in which this court has considered the effect of the language in § 27–12–603(b), supra.

In *Claim of Vondra,* Wyo., 448 P.2d 313 (1968), the issue and discussion concerned only the causal connection between the affliction and the employment. The court's discussion centered on the sufficiency of the evidence. It concluded at page 318 with one of the quotations set out in *Schwilke:*

"In view of the matters discussed herein, we think that under any reasonable view the burden of the trial court *in determining the causal relationship* between a heart injury of a workman and his employment is most difficult. Certainly he cannot be satisfied in discharging this upon less than the preponderance of believable evidence that the work effort contributed in a material degree to the precipitation, aggravation, or acceleration of the existing disease." (Emphasis added.)

The award of the trial court in favor of the workman was affirmed. One of the presented issues concerned the propriety of the trial court adopting the "usual-exertion" rule, but the opinion did not address the question of whether or not obtaining a sheet of metal from an outside scrap pile and dragging it into the shop was a task unusual for employees hired to fabricate manhole covers.

In *Claim of McCarley,* Wyo., 590 P.2d 1333 (1979), the presented issues were: (1) whether or not there was "causal connection" between the work activities and the heart injury, and (2) whether or not the symptoms manifested themselves within four hours after the work-related exertion. The employee did not work on the day the injury manifested itself. He was riding snow machines when the injury was manifested. The causal connection was not found and the question of exertion unusual to employees was not discussed. We did set out the four requirements of § 27–12–603(b), one of which was: "The claimant must establish a period of employment stress unusual or abnormal *for employees in claimant's occupations"* (emphasis added), 590 P.2d at 1335.

In the other two most recent instances in which we considered the effect of the language in § 27–12–603(b), supra, (also quoted and discussed in *Schwilke*), we did concern ourselves with the unusual-exertion rule. In each instance, the fact situation was such that substantial evidence supported the trial court's finding that the worker was in a period of employment stress "clearly unusual to, or abnormal for, employees in that particular employment."

In *Mor,* the worker was a cement mason but had to do the work of "helpers" or "hod carriers." The strenuous activity involved in carrying buckets of cement up stairs to several levels of the project was unusual to and abnormal for cement masons whose tasks were to form and smooth wet cement. Although these facts were sufficient to affirm the trial court's award in favor of the worker, we did use language unnecessary to the affirmance and at variance with the language of the statute. We said at 566 P.2d, page 222:

"Whether the exertion of work was clearly unusual to, or abnormal for, *the individual worker in his particular employment* is a question of fact to be determined by the trial court, and its findings will be upheld where supported by substantial competent evidence. See *Lentz v. City of Marion,* 222 Kan. 169, 563 P.2d 456, 460; and *Clayton v. Lease-Way Transportation Corp.,* Fla., 236 So.2d 765, 766. Cf. *Williams v. Northern Development Co.,* Wyo., 425 P.2d 594; *White v. Maverick Production Co.,* 63 Wyo. 452, 182 P.2d 818. It should be emphasized, however, that the exertion in question must only be unusual *to the employee*—it need not necessarily be unusual to others engaged in the same employment. *Herbert v. Sharp Brothers Contracting Co.,* Mo.App., 467 S.W.2d 105, 108. See also, *Commercial Transfer Company v. Quasny,* 245 Md. 572, 227 A.2d 20, 24. To sustain his burden of proof, as to legal causation, the statute requires that the employee show that the causative exertion was clearly something beyond his

normal routine—something more than the worker's usual work." (Emphasis in first sentence added.)

The emphasized portion in the first sentence of the quotation inaccurately states the Wyoming statutory requirement. The statute requires the exertion to be gauged by unusual or abnormal stress for *employees in that particular employment,* a considerably different standard than one with reference to "the individual worker in his particular employment." Of the four cases cited in support of the first sentence, the Kansas and Florida cases interpret standards altogether different than the Wyoming statutory standard. The Kansas standard is contained in K.S.A.1981, 44–501:

" * * * Compensation shall not be paid in case of coronary or coronary artery disease or cerebrovascular injury unless it is shown that the exertion of the work necessary to precipitate the disability was more than the employee's usual work in the course of the employee's regular employment."

The Florida standard is contained in F.S. 1981, 440.02(18):

"(18) 'Accident' means only an unexpected or unusual event or result, happening suddenly. * * * "

The two Wyoming cases cited in the quotation from *Mor,* supra, concern causal connection and do not address the unusual-exertion rule.

The second sentence in the *Mor* quotation, supra, is a conclusion at definite odds with the legislative mandate. The legislative standard is specifically set to be "unusual to, or abnormal for, employees in that particular employment." There is no manner or fashion in which that definite and positive language can be read to apply only to a particular workman and not to "employees in that particular employment."

The two cases cited in support of the second sentence in *Mor* are, again, premised on statutes altogether different from the Wyoming statute. Such statutes do not have the plain, definite and clear Wyoming statutory language relative to stress for "employees in that particular employment."

The pertinent part of the statute setting the standard in the Missouri case and under which the holding in the case was predicated reads:

"2. The word 'accident' as used in this chapter shall * * *, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." Mo.Rev.Stat.1978, § 287.020(2).

The statute setting the standard in the Maryland case and under which the holding in the case was predicated reads in pertinent part:

"Every employer subject to the provisions of this article, shall pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury, * * *." Md.Ann.Code 1957, Art. 101, § 15.

Accordingly, the last sentence of the quotation from *Mor,* supra, is inaccurate except insofar as the "normal routine" or "worker's usual work" was also the normal routine and usual work of the other "employees in that particular employment."

Finally, in *Jim's Water Service v. Eayrs,* Wyo., 590 P.2d 1346 (1979), the fourth case quoted and discussed in *Schwilke,* supra, relative to the language in § 27–12–603(b), supra, the employee truck driver got stuck in a snow drift and had to walk about a mile for help on a cold day with strong winds and deep blowing snow. After he then shoveled snow vigorously for about a half hour in an effort to extricate the truck, he died of heart-related injury.

Again, there was ample evidence to uphold the finding of the trial court that the exertion occurred during employment stress clearly unusual to, or abnormal for, employees in that particular employment. We so found, but worded the opinion in a fashion whereby it could be said that we spoke of the unusual or abnormal exertion as per-

taining to the worker rather than to the worker and all other employees in that particular employment. We said at 590 P.2d, page 1349:

"James was expected to haul water and to maintain his truck. In the event he became snowbound he was expected to use reasonable efforts to extricate himself. The trier of fact had sufficient substantial evidence to find the normal routine was exceeded when James acted to the degree he did and that the stress or exertion, while not different in kind, was greater in degree than normal. It appears from the evidence James was involved in an effort that consumed the entire day of November 20 and involved extensive and strenuous efforts. In *Mor, Inc. v. Haverlock*, Wyo., 566 P.2d 219 (1977) we found the burden satisfied when the causative exertion was clearly something beyond the worker's normal and usual routine. We will not disturb the determination of facts here."

To the extent that such language can be taken to require the exertion to be only that unusual to, or abnormal for, the individual workman rather than unusual to, or abnormal for, the "employees in that particular employment," I would overrule.

In conclusion, I believe that there was sufficient evidence to support the finding of the trial court that:

" * * * the employee, Gale A. Yost, did not die of a heart attack as a result of causative exertion during the actual period of employment stress clearly unusual to or abnormal for employees in that particular employment."

Leaving out of consideration entirely the evidence of the unsuccessful party and assuming the evidence of the successful party to be true together with the reasonable inference therefrom, as we must do[2], *Brittain v. Booth*, supra, the facts are as follows:

Gale Yost's truck got stuck in a bentonite pile. It was common for the trucks to get so stuck—three or four times a day or even on every other trip if the bentonite was damp. The usual thing for the drivers to do was to "do absolutely nothing but sit and wait" and read. Yost did exactly that. He sat in his truck and read and drank coffee thirty minutes before his death. There is absolutely no evidence that Yost did not perform the same tasks in the same fashion as did he and the other drivers every day. The pit condition was not unusual. There was no evidence of mechanical trouble with the truck. The road conditions were normal. Yost had performed the same routine for over two years. The other drivers regularly performed the same routine.

The trial court had more than substantial evidence upon which to find Yost to not have engaged in exertion "clearly unusual to, or abnormal for, employees in * * * [his] particular employment."

The holdings of courts construing statutes dissimilar from that of Wyoming are of no value to us in construing the Wyoming statute.

The results reached in *Schwilke* and other recent cases involving the application of § 27–12–603(b) are consistent with the requirement of that statute that for benefits for employment related coronary conditions to be paid, the causative exertion must occur during the actual period of employment stress "clearly unusual to, or abnormal for, employees in that particular employment." The cases themselves need not be overruled but any language in those cases indicating a requirement that the exertion must only be unusual to, or abnormal for, the particular employee should be overruled.

To do otherwise would be to violate that said by Justice Rose in *Claim of McCarley*, supra, 590 P.2d at 1338, concerning this statute:

" * * * The statute is not ambiguous and, therefore, we can indulge in no statutory-interpretation exercises. The plain English, understandable language of the statute speaks for itself and, therefore, settles the question."

I would affirm.

---

2. The majority opinion did just the opposite.