In the Matter of the Injury to Denny G. DESOTELL, deceased, Employee.

Gail A. DESOTELL, Appellant (Claimant),

v.

STATE of Wyoming, ex rel. WYOMING WORKER'S COMPENSATION DIVISION, Appellee (Objector–Defendant).

No. 88–105.

Supreme Court of Wyoming.

Jan. 20, 1989.

Michael S. Messenger and Wendy L. Press of Messenger & Jurovich, Thermopolis, for appellant.

Joseph B. Meyer, Atty. Gen., Josephine T. Porter, Sr. Asst. Atty. Gen., and Ron Arnold, Asst. Atty. Gen., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

On June 30, 1985, Denny G. Desotell died of a heart attack while driving a tractor-trailer near Elk Mountain, Wyoming. Gail Desotell, his widow, filed a claim for death benefits under the worker's compensation statutes. The Wyoming Worker's Compensation Division (Division) filed an objection to her claim, which was ultimately denied after a trial. On appeal, Gail Desotell argues that the trial court did not properly apply the plain language of W.S. 27-12-603 (June 1983 Repl.),[1] to the facts of this case.

We affirm.

In June 1985, Mr. Desotell was employed as a truck driver by Chancey Yenny of Greybull, Wyoming. On June 23, 1985, Mr. Desotell and his wife left Greybull, Wyoming, to haul a variety of cargoes between the states of Wyoming, California, Washington and Colorado. The trip progressed normally between Wyoming and Vancouver, Washington.

Mr. Desotell and his wife arrived in Vancouver on June 28, 1985, expecting to pick up a trailer loaded with steel beams. The paper work for the load was supposed to have been completed so that Mr. Desotell

---

1. Gail Desotell's claim arose under W.S. 27-12-101 through 27-12-805 (June 1983 Repl.). That chapter was repealed and amended effective July 1, 1987. It is now codified as W.S. 27-14-101 through 27-14-804 (June 1987 Repl.).

could hook onto the trailer and leave. When they arrived in Vancouver, however, they found an improperly balanced load, no paperwork, and defective lights and brakes on the trailer.

With his wife's help, Mr. Desotell tried to reposition the beams, but to no avail. Eventually he was able to use a forklift to move the beams. Once the beams were repositioned, Mr. Desotell spent some time securing the load with chains and "binders." While tightening a binder with a "cheater bar," he suffered a medical condition known as an ischemic attack or temporary loss of oxygen to the heart. The attack rendered him momentarily short of breath and caused him to drop to his knees. These symptoms were not recognized as a heart problem by either Mr. Desotell or his wife, and after the symptoms subsided, they finished securing the load. Mr. Desotell also had to reset the trailer brakes and rewire the lights. These tasks completed, the couple spent some time driving around Vancouver to acquire the remaining paperwork necessary for the trip to Colorado. They finally arrived in Ontario, Oregon, around midnight.

The couple arose around 5:30 a.m. on June 29, 1985, and Mr. Desotell drove to Little America, Wyoming. At trial, Mrs. Desotell recalled that during this part of the trip her husband was lethargic and quieter than usual, was perspiring, and appeared pale. She also recalled seeing him rubbing his chest area. They spent the night at Little America. On June 30, 1985, while driving near Elk Mountain, Wyoming, Mr. Desotell became pale, his speech slurred, and he called for help on his C.B. radio. He told his wife how to shut down the truck and then suddenly went into cardiac arrest. An ambulance was summoned from Laramie, Wyoming, and several attempts to revive him in the meantime were unsuccessful. By the time the ambulance pulled into Ivinson Hospital in Laramie, Mr. Desotell was dead.

By stipulation of the parties, expert medical testimony was introduced at trial through depositions. Gail Desotell relied upon the expert testimony of Glen L. Loveday, M.D., a doctor of internal medicine. Dr. Loveday testified that Mr. Desotell suffered an ischemic attack on June 28, 1985, in Vancouver. His opinion was that the physical and emotional stress Mr. Desotell experienced while tightening the load of steel beams on that day caused the ischemic attack. He described an ischemic attack as a condition in which the heart muscle does not receive an adequate blood supply, causing it momentarily to malfunction. Dr. Loveday then explained that the symptoms Mr. Desotell experienced after the ischemic attack were signs that his heart was unstable and susceptible to a "severe cardiac event." In Dr. Loveday's expert opinion, Mr. Desotell died on June 30, 1985, of sudden cardiac death. The cause of death listed on the death certificate was a condition called a myocardial infarction (heart attack), which can lead to sudden cardiac death.

On cross examination, Dr. Loveday agreed with the autopsy findings of Linda Yost, M.D., an expert medical witness for the state. Dr. Yost concluded that Mr. Desotell had suffered from long-term narrowing of the coronary arteries, or atherosclerosis, when he died. This narrowing eventually led to blockage of blood flow to Mr. Desotell's heart muscle, causing it to stop beating. Dr. Loveday testified that such narrowing can be the result of numerous physiological and emotional factors the effect of which are combined over a period of years. He also agreed that a person suffering from atherosclerosis would not necessarily have to be working to have a heart attack; in fact, an atherosclerotic person could suffer a sudden heart attack while at rest or asleep. Dr. Loveday found no evidence in Mr. Desotell's medical history before June 28, 1985, that he had ever suffered a heart attack. When questioned about the nature of Mr. Desotell's ischemic attack in Vancouver, Dr. Loveday would not speculate whether Mr. Desotell's ischemic attack resulted in any *permanent* heart muscle damage.

This testimony was consistent with Dr. Yost's findings in the autopsy report, which showed no microscopic muscle cell death associated with the ischemic attack.

Dr. Loveday testified instead that the ischemic attack was the first outward indication of the unstable nature of Mr. Desotell's heart. After the ischemic attack, Mr. Desotell's heart became noticeably unstable and he should have been hospitalized.

Mrs. Desotell filed her claim for death benefits on July 25, 1985. The Division informed her of its objection to an award of death benefits on August 28, 1985, eventually filing a formal objection on July 23, 1986. After discovery and other pretrial maneuvering, the case was set for trial on February 5, 1988. On March 1, 1988, the trial court entered its order denying death benefits to Mrs. Desotell. This appeal followed.

Mrs. Desotell's first issue is based on W.S. 27–12–603(b) (June 1983 Repl.), which, at the time of Mr. Desotell's death, provided:

> Benefits for employment-related coronary conditions except those directly and solely caused by an injury or disease are not payable unless the employee establishes by competent medical authority that there is a direct causal connection between the condition under which the work was performed and the cardiac condition, and then only if the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, employees in that particular employment, and further that the acute symptoms of the cardiac condition are clearly manifested not later than four (4) hours after the alleged causative exertion.

She argues that, in denying her award, the trial court applied this statute in contravention of recent case law from this court involving similar fact situations. Specifically, she asserts that *Yost v. Wyoming State Treasurer, ex rel. Wyoming Worker's Compensation Division*, 654 P.2d 137 (Wyo.1982), and *Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division v. Schwilke*, 649 P.2d 218 (Wyo. 1982), control the outcome of this case. As

we shall show, her reliance on those two decisions is understandable but, regrettably for her, misplaced.

In *Schwilke* we affirmed the district court's award of widow-and-children's benefits. According to expert testimony, Mr. Schwilke, the deceased truck driver, had suffered a heart attack within the twenty-four hour period before his death; he suffered a second heart attack while at work and died instantly. His work immediately before the fatal heart attack involved the usual and normal activity of loading oilfield equipment onto his truck. The trial court's award of benefits was affirmed under statutory language identical to that set out above.[2] 649 P.2d at 223. This court reasoned that our previous holding of *Mor, Inc. v. Haverlock*, 566 P.2d 219, 222 (Wyo. 1977), required the application of a subjective test to determine whether Mr. Schwilke's activities at work on the day he died were unusual or abnormal under the statute. This court opined that, under the subjective test applied in *Mor*, Mr. Schwilke's once normal and usual workday activity of loading his truck metamorphosed into very abnormal and unusual workday activity based on medical testimony proving heart damage caused by his earlier heart attack.

This application of the subjective test was incorrect. For purposes of deciding the Schwilkes' claim, the applicable Wyoming statutory provision was the one amended in 1977, which plainly imposed an objective, not a subjective, test to determine the character of the period of work related stress in question. That statute is the same one quoted above in this case, and it reads in pertinent part: "only if the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, *employees in that particular employment* * * *." (Emphasis added.) Contrast that statutory language with the language of W.S. 27–361(b), 1957, C.1967 (Cum.Supp.1975),[3]

---

**2.** This case arises under W.S. 27–12–603(b) (June 1983 Repl.), and *Schwilke* and *Yost* arose under W.S. 27–12–603(b) (1977); the language

of the 1977 and 1983 codifications of the statute is identical.

**3.** See 1969 Wyo.Sess.Laws ch. 200, § 15.

which controlled the outcome of *Mor*, and which provided in pertinent part: "only if the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, *the individual employee, in that particular employment * * *.*" Id. at 221. (Emphasis added.) Obviously, this court upheld the award of benefits in *Schwilke* by misapplying the subjective test mandated by W.S. 27–316(b) 1957, C.1967 (Cum.Supp.1975), and followed in *Mor*, when it should have reversed the award by adhering to the express objective test required under W.S. 27–12–603(b) (1977). See 1977 Wyo.Sess. Laws ch. 142, § 27–361. See also Comment, *The Compensability of Cardiac Conditions Under Wyoming Worker's Compensation: Health Insurance or Worker's Compensation?* XX Land & Water L.Rev. 607, 614–15 (1985).

The state's reaction to *Schwilke* was predictable: it drove *Yost* into court as the "vehicle with which to overrule" *Schwilke* and establish an application of the objective test required by amended statutory language. *Yost*, 654 P.2d at 139. In *Yost* the deceased truck driver, according to medical testimony, had suffered an earlier heart attack within two to fourteen days before suffering his second fatal heart attack at work. As in *Schwilke*, Mr. Yost had been performing his usual and normal work activities when he suffered fatal arrhythmia as a complication of the first attack. Although the applicable statute, W.S. 27–12–603(b) (1977), had been codified as amended in 1977 for nearly five years, this court again misapplied the subjective test first recognized in *Mor* and incorrectly followed in *Schwilke*. On that basis, the district court's denial of death benefits based on the plain language of the 1977 statute was reversed.

This court erred in *Schwilke* and *Yost* by misreading the clear 1977 legislative mandate requiring claimants to prove "an actual period of employment stress" based on an objective standard and by applying the superseded subjective test used in *Mor*. We shall not perpetuate that error here.

■ Another problem with this court's application of W.S. 27–12–603(b) (1977), in *Schwilke* and *Yost* was our failure to keep the four requirements set out by the statute distinct and in the proper logical order of proof. Given the way the statute is phrased, the claimant must first prove that the injured employee experienced an "actual period of employment *stress* clearly unusual to, or abnormal for, employees in that particular employment * * *." Next, and only after proof of the first requirement, the claimant must establish legal causation, by proving a "causative exertion" during the proven period of actual unusual or abnormal stress. Then, the claimant must establish medical causation, by introducing competent medical testimony evidencing a direct causal connection between the causative exertion and the coronary condition. Last, the claimant must introduce evidence showing that the acute symptoms of that coronary condition were manifested within four hours of the causative exertion. *State, ex rel. Wyoming Worker's Compensation Division v. Van Buskirk*, 721 P.2d 570, 572 (Wyo.1986) first analyzed as a four-part test in *Claim of McCarley*, 590 P.2d 1333, 1335–336 (Wyo. 1979).

This court, without explanation, has repeatedly lumped the first two elements of proof together, thereby misreading the legislative distinction between "an actual period of employment *stress*" and a "causative *exertion.*" See, e.g., *Kaan v. State, ex rel. Wyoming Worker's Compensation Division*, 689 P.2d 1387, 1389 (Wyo.1984); *Creek v. Town of Hulett*, 657 P.2d 353, 356 (Wyo.1983), *Yost*, 654 P.2d at 140; *Schwilke*, 649 P.2d at 220. Compare *Van Buskirk*, 721 P.2d at 573; and *Yost*, 654 P.2d at 143 (Rooney, J., dissenting, in which Raper, J., joined).

■ It is fundamental when reading an unambiguous statute to give every word a meaning so that no word is superfluous. See *Sanchez v. State*, 751 P.2d 1300, 1305 (Wyo.1988). A plain reading of the statute reveals that the claimant must establish "a direct causal connection between the condition under which the work was performed

and the cardiac condition and then only if *the causative exertion* occurs *during* the actual *period of employment stress* * * *." The statute sets out the "period of employment stress" and "causative exertion" as distinct requirements and phrases them so that the period of stress must be proven under the objective standard discussed above, *before* the causative exertion alleged to have occurred during the period of stress can be identified as legal causation. Cf. *Claim of McCarley*, 590 P.2d at 1336.

Our analysis of this court's past misapplication of W.S. 27–12–603(b) (1977), culminates in a rule that is true to the plain language of the statute. Although we recognize that the compensation act should be liberally construed in favor of an award, we also must recognize "such a policy does not give us carte blanche authority to ignore clear statutory provisions and under the guise of construction extend the beneficent purpose of the law to a disease or injury that does not fall reasonably within the reach of legislative language." *Olson v. Federal American Partners*, 567 P.2d 710, 714 (Wyo.1977). For a claimant to receive benefits under W.S. 27–12–603(b) (June 1983 Repl.), he must first prove, under the statutorily imposed objective standard, that the injured employee experienced an "actual period of employment stress clearly unusual to, or abnormal for, employees in that particular employment * * * *" "[T]hen only if the causative exertion occurs during * * *" the proven period of employment stress, can the claimant proceed to prove medical causation and the four hour requirement. We must read the statute this way to give the requirement of a "period of stress" and a "causative exertion" each plain and distinct meaning.

■ We follow that approach in this case. Mrs. Desotell argues that Mr. Desotell experienced a period of employment stress, when they were in Vancouver trying to pick up the load of steel beams, that was unusual or abnormal for employees in his occupation. She asserts that the combination of the emotional and physical stress Mr. Desotell experienced (1) when he arrived in Vancouver and found an improperly balanced load, no paperwork, and a trailer lacking proper brakes and lights, and (2) when he repositioned and tightened the load established the required period of unusual stress. The trial court heard this argument, but concluded that the events in Vancouver, when viewed objectively, could not be viewed as creating a period of stress unusual to, or abnormal for, other "employees" who drive tractor-trailer rigs. Our standard for reviewing the sufficiency of the evidence underlying such a trial court finding involves examining only the evidence in the record that is favorable to the prevailing party, giving that evidence every favorable inference. In the *Matter of Bagshaw*, 753 P.2d 1044, 1045 (Wyo.1988). Although we do not question the assertion that Mr. Desotell experienced some stress as a result of the problems he encountered in Vancouver, we hold the trial court was correct when, under the objective standard, it found the period of stress Mr. Desotell experienced in Vancouver was not unusual to, or abnormal for, "employees" who drive tractor-trailer rigs. Under the applicable standard of review the record supports that finding and we must defer to it. The trial court properly denied Mrs. Desotell's claim for death benefits under W.S. 27–12–603(b) (June 1983 Repl.).

■ The second issue asserted by Mrs. Desotell is that she "could" be entitled to benefits under W.S. 27–12–603(a) (June 1983 Repl.). That statute provides:

(a) The burden of proof in contested cases involving injuries which occur over a substantial period of time is on the employee to make proper proof of his claim by a preponderance of the evidence, and to also prove by competent medical authority that his claim arose out of and in the course of his employment, by showing by a preponderance of evidence that:

(i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury;

(ii) The injury can be seen to have followed as a natural incident of the work as a result of the employment;

(iii) The injury can fairly be traced to the employment as a proximate cause;

(iv) The injury does not come from a hazard to which employees would have been equally exposed outside of the employment; and

(v) The injury is incidental to the character of the business and not independent of the relation of employer and employee.

Her second argument is a novel one. She essentially argues that if her husband could not recover under W.S. 27–12–603(b) (June 1983 Repl.), then his death was somehow "unexplainable" and must be covered under W.S. 27–12–603(a) (June 1983 Repl.), because Mr. Desotell died while working.

The plain language of W.S. 27–12–603(a) (June 1983 Repl.), does not support that theory of recovery; further, the trial court did not find facts capable of supporting a claim under that statute. To meet the requirements quoted above, Mrs. Desotell had to show that something other than slowly developing atherosclerosis was the proximate cause of Mr. Desotell's June 30, 1985, heart attack. She failed to do so at trial. The trial court found that Mr. Desotell died of an initial heart attack on June 30, 1988, while performing his usual and normal work activities. At trial, the state elicited competent medical evidence attributing Mr. Desotell's heart attack to years of atherosclerotic build-up in his coronary arteries. Mrs. Desotell, on the other hand, could not show a direct causal connection between Mr. Desotell's work activities and his heart attack. The trial court found in favor of the state. The applicable standard of appellate review requires that we defer to the trial court's findings, and, in doing so, we must agree with the trial court that Mrs. Desotell was not entitled to death benefits under W.S. 27–12–603(a) (June 1983 Repl.).

The trial court correctly denied benefits to Mrs. Desotell under both W.S. 27–12–603(b) (June 1983 Repl.) and W.S. 27–12–603(a) (June 1983 Repl.). Affirmed.

THOMAS, J., filed a specially concurring opinion.

THOMAS, Justice, specially concurring.

I agree with the result reached by the majority opinion in this case. I agree because I think that result is predictable whether the objective test now adopted by the court pertains, or whether the subjective test from existing case precedent pertains.

I am concerned, however, because I interpret the majority opinion as saying that it is correcting an error of the court from prior cases. This approach is a departure from the usual application of the doctrine of stare decisis, and I cannot agree with it. Existing precedent stands as a rule of law, and if no longer acceptable, it should be overruled.

The thesis of the majority is, adopting the law from Comment, *The Compensability of Cardiac Conditions under Wyoming Worker's Compensation: Health Insurance or Worker's Compensation?*, XX Land & Water L.Rev. 607 (1985), that prior decisions of the court were in error because they did not apply the objective test clearly manifested by the amendment to the statute in 1977. The law journal article draws that conclusion only from the language of the statute. That may be an appropriate opinion, but the Supreme Court of Wyoming had a contrary opinion which became the court's judgment. In essence, the cases decided after the amendment of the statute consider the language "employees in that particular employment" as the substantial equivalent of "the individual employee in that particular employment." See *Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division v. Schwilke*, 649 P.2d 218 (Wyo.1982); *Yost v. Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division*, 654 P.2d 137 (Wyo.1982); *Creek v. Town of Hulett*, 657 P.2d 353 (Wyo.1983). That view was articulated as early as 1982, and

yet the legislature did not choose to make any further change in the statute.

The majority here then cannot be engaged in correcting an error of law made by this court previously like the court would do with respect to a prior decision of an inferior court. Instead, if the doctrine of stare decisis has significance, it is clear that the court now is changing the law. Certainly, the court can do that. I would object strenuously, however, if it appeared to me that the appellant would be entitled to relief under the prior rule because this is a change in substantive law which should be prospective only.

This latter feature may be of some import with respect to claims which arose prior to the promulgation of this decision.