18460

Elizabeth H. WALKER and Daniel Hughey Walker, by g/a/l, Respondents, v. CITY OF COLUMBIA and The South Carolina Workmen's Compensation Fund, Appellants.

(146 S. E. (2d) 856)

*Messrs. Daniel R. McLeod, Attorney General,* and *David Aiken, Assistant Attorney General,* of Columbia, *for Appellants,*

*Messrs. John W. Foard, Jr.* and *Isadore S. Bernstein,* of Columbia, *for Respondents,*

February 14, 1966.

LEGGE, Acting Justice.

Appeal is from a circuit court order affirming the Industrial Commission's award for the death by coronary thrombosis of a police officer of the City of Columbia. The exceptions charge that the court erred:

1. In affirming the Commission's finding that the employee's fatal heart attack had resulted from unusual physical exertion and unusual excitement, because that finding was not supported by the testimony; and

2. In affirming the Commission's finding that the employee's death resulted from accidental injury arising out of and in the course of his employment, because that finding was not supported by the testimony.

The facts as disclosed by the testimony and as found by the Hearing Commissoner, whose findings were affirmed by the Commission, were as follows:

The deceased employee, Manuel J. Walker, was forty-five years of age and had been a police officer of the City of Columbia for approximately eleven years prior to his death on September 19, 1962. On the morning of that day he completed his assigned tour of police duty at 8:00 o'clock and went to his home, about half a mile beyond the city's corporate limits. About three o'clock that afternoon he and his wife observed a neighbor, Watson, whose house was across the street from theirs, driving a car in and out of his driveway and up and down the street in a reckless and dangerous manner. Watson appeared to be intoxicated. While driving into his driveway, he lodged the car on top of a drain culvert, from which he was unable to dislodge it. Walker reported the matter to the State Highway Patrol, who dispatched Patrolman Steedley to the scene. Because Watson was on his own property, Steedley took no action other than to forbid him to drive the car because of his condition, and radioed the Highway Patrol requesting that the sheriff's office be called to send a deputy. In response to that call Deputy Sheriff Graham arrived, finding Watson standing between Walker and Steedley, in the street at the corner of Walker's yard. Graham, observing that Watson was under the influence of intoxicants, asked him if he had been driving the car. Watson admitted that he had been driving it, but denied that he was drunk. Graham then placed his hand on Watson's shoulder and told him that he was under arrest. Watson jerked back, with an oath, and began to resist arrest. Thereupon Walker took hold of Watson's right arm, and Steedley of his left arm, and a struggle ensued. The weather was extremely hot, and all of them were perspiring profusely. Graham went to his car for handcuffs, and the struggle continued while they were being applied. Although handcuffed, Watson continued to scuffle with the three officers, who had to drag him some twenty feet to

Graham's car; and the struggle continued while they pushed him into the car. According to the testimony of both Steedley and Graham, the struggle lasted between five and ten minutes. Since it was apparent that he could not take the prisoner to jail alone, Graham radioed for another car. It arrived in a few minutes, with two deputies, who transferred the prisoner to it and drove off with him. While Watson was being thus transferred, Walker, who during the interval between the struggle and the arrival of that car had been sitting in a chair in his yard, complained of feeling ill and went into his house. Soon afterwards, Mrs. Walker came out and told the officers that her husband was ill and had apparently suffered a heart attack. They assisted him into Graham's car and he was rushed to the office of Dr. L. B. Jowers, his family physician, where he was examined by Dr. Jowers' associate, Dr. S. R. Shannon, who concluded that he had suffered a coronary thrombosis. He was immediately hospitalized, and died within two hours.

Dr. Jowers testified that in June, 1959, Walker had had a light heart attack, for which he was under medication until January, 1960; that he was returned to limited work on October 1, 1959, and later to full duty; and that on the date of his death his condition was such that he could, without danger to his health, perform the usual and normal duties of a city policeman.

Graham, describing the arrest, testified that it took the combined efforts of Walker, Steedley and himself to hold Watson; that he (Graham) could not have handled him alone without using a blackjack; that the arrest was an unusual one; that in Graham's career as a law enforcement officer, extending over a period of some seventeen years, he had seen very few prisoners put up such a fight; and that the weather at the time of the arrest was extremely hot. Steedley also testified that he considered the arrest an unusual one, requiring unusual exertion; that Watson was strong and very much under the influence of some intoxicant;

and that he (Steedley) could not have handled him alone without blackjacking him.

W. A. Cauthen, Captain of the patrol division of the Columbia Police Department, testified on cross-examination that he considered it unusual that the efforts of three officers should be required for the arrest of one man. Chief of Police Campbell testified that resistance of arrest is more common now than formerly, and that it is no longer unusual for as many as three officers to be required to make an arrest.

Dr. Shannon testified that based upon his examination of Mr. Walker, the history given by Mr. Walker as to what had occurred just prior to his being taken to Dr. Shannon's office, and the details of the arrest of Watson as related by Graham, whose testimony Dr. Shannon had heard, it was his opinion that the coronary attack had been brought on by unusual exertion and emotional excitement.

A coronary thrombosis suffered by an employee is a compensable accident if it is induced by unexpected strain or overexertion in the performance of the duties of his employment or by unusual and extraordinary conditions in the employment. And the right to compensation in such case is not affected by the fact that a pre-existing pathology may have been a contributing factor, or by the fact that the unusual or excessive strain that precipitated the heart attack occurred while the employee was performing work of the same general type as that in which he was regularly involved. *Kearse v. South Carolina Wildlife Resources Department*, 236 S. C. 540, 115 S. E. (2d) 183; *Walsh v. United States Rubber Co.*, 238 S. C. 411, 120 S. E. (2d) 685.

The finding of the Hearing Commissioner, which was affirmed and adopted by the Commission, that Walker's heart attack and ensuing death resulted from the unusual physical exertion and excitement attendant upon his participation in the arrest of Watson, is supported by the testimony of Dr. Shannon and by that of Deputy Sheriff

Graham and Patrolman Steedley, to which we have referred. Whether, or to what extent, the testimony of Graham and Steedley may have been weakened by that of Campbell or any other witness, is a matter with which we are not concerned. It is axiomatic that in a Workmen's Compensation case the Industrial Commission is the fact-finding body, and that in their review of a factual finding by the Commission the courts may not weigh the evidence, their function being limited to determination of whether or not such finding is supported by any competent evidence. *Black v. Barnwell County,* 243 S. C. 531, 134 S. E. (2d) 753.

Appellants contend, under their second exception, that the Commission's finding that Walker's death resulted from accidental injury "arising out of and in the course of" his employment was without evidentiary support, for the reason that at the time and place of the incident involved he was not on police duty and was, moreover, outside of the city's corporate limits and therefore without authority to make the arrest, not being "in pursuit" of the offender. See Code, 1962, Sections 17-254, 53-1.

The issue thus raised must be resolved in the light of the facts hereinafter stated, which in the record before us appear undisputed. In the first place the employee, Walker, was not making the arrest. Indeed it is quite clear that he recognized that since he was outside of the corporate limits of the city he was without jurisdiction to do so; and it was for that reason that he reported the situation to the State Highway Patrol. Incidentally, it is also clear that Patrolman Steedley considered himself without jurisdiction to arrest Watson, who was at the time on private property and whose unlawful acts had not been committed in Steedley's presence. It was in consequence of this recognition by Walker and Steedley of their lack of jurisdiction to make the arrest that Graham, the deputy sheriff, whose power was not so limited, was brought to the scene. The Code sections before mentioned, which deal with the authority of city policemen to make an arrest beyond the corporate limits, are therefore

not applicable to the factual situation here. It was Graham who made the arrest, and it was only upon Watson's violent resistance that Walker and Steedley came to the assistance of their fellow officer. The issue thus presented is not whether Walker was empowered to make the arrest, but whether in rendering assistance to Graham he was, under the circumstances, acting within the scope of the duties of his employment.

In evidence was the police manual prescribing rules and regulations for the guidance of the members of the police force of the City of Columbia. Chief of Police Campbell testified that each officer, including Walker, had been given a copy of this manual and had been instructed to follow the rules and regulations therein contained. Its sections pertinent here read as follows:

"Section 405. Any member of the department who fails to take effective police action or who fails to aid and protect his fellow officer in time of danger or under circumstances where danger might reasonably be impending, except where actually incapacited, is subject to dismissal.

"Section 406. Members of the department shall always be subject to duty although periodically relieved of the routine performance of such duty. They shall at all times respond to the lawful orders of superior officers, other proper authorities, and to the call of civilians in need of police assistance. Proper police action must be taken at all times in every matter requiring such action."

Chief Campbell testified that as construed by the department and understood by the members of the police force, the quoted regulations required the officer to come to the assistance of a fellow officer at any time and anywhere, whether within or without the city limits; that the term "fellow officer" as understood in connection with these regulations included any police officer, whether a member of the city police force or not; and that he considered his men to be on duty twenty-four hours a day. He testified also that if,

as Graham and Steedley had testified, they were having trouble in making the arrest and needed Walker's help, it was Walker's duty to go to their aid and he acted properly in doing so and would have been subject to disciplinary action had he not done so. To the same effect was the testimony of Police Captain Cauthern; there was no testimony to the contrary.

It is thus manifest that at the time and place of the incident that precipitated his death Walker, although outside of the area in which he normally worked, was nevertheless engaged in the performance of the duties of his employment as they were understood by his immediate superiors and as he had been given to understand them. It is not inconceivable that there may be circumstances in which the regulations before quoted, as interpreted by the Columbia police department, would be so obviously unreasonable or impracticable that obedience to them by a member of the force might imperil his coverage under workmen's compensation. "Anywhere" embraces a rather large area. But we do not think that the circumstances disclosed by the undisputed testimony in the case at bar were such as to require us to hold, as a matter of law, that the deceased employee should have questioned, and rejected, the conditions of the regulations before quoted—which were, in effect, conditions of his contract of employment—, and that his failure to do so destroyed his coverage under workmen's compensation. Under the facts of this case, we find no error in the judgment appealed from, and it is therefore affirmed.

Moss, Acting C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.