In the Matter of the Claims of Helen L. CREEK, Widow of Darwin Creek, Appellant (Claimant),

v.

TOWN OF HULETT, Appellee (Employer-Defendant),

v.

WYOMING STATE TREASURER, ex rel. WORKER'S COMPENSATION DIVISION, Appellee (Objector-Defendant).

No. 5769.

Supreme Court of Wyoming.

Jan. 21, 1983.

R. Douglas Dumbrill of Hughes & Dumbrill, Sundance, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Sr. Asst. Atty. Gen., Carl J. Hildebrand, Asst. Atty. Gen., and Steven R. Czoschke, Legal Intern, for appellee Wyoming State Treasurer, ex rel. Worker's Compensation Div.

Before ROONEY, C.J.,* and RAPER, THOMAS, ROSE ** and BROWN, JJ.

THOMAS, Justice.

The appellant in this case urges the court to apply our adaptation of the unusual exertion rule which focuses upon exertion which is unusual for the particular employee who is seeking compensation to a worker's compensation case in which a police officer suffered a fatal heart attack. The unusual exertion relied upon by the appellant was stress attributed to a role conflict arising out of the necessity to perform law enforcement functions with respect to an individual who was in the company of the police officer's daughter. The district court concluded that the circumstances did not manifest any unusual or abnormal stress for this peace officer, and held that the application for worker's compensation benefits on behalf of the widow and minor child of the deceased officer must be denied. We shall affirm the district court.

Darwin Creek died on September 13, 1981, from a myocardial infarction accom-

* Became Chief Justice on January 1, 1983.

** Chief Justice at time of oral argument.

panied by a fatal arrhythmia. He was then 53 years old, and had been employed by the Town of Hulett as its town marshal for approximately two years. He previously had served for 17 years as a game warden for the Wyoming State Game and Fish Commission, and he had retired from that position. Witnesses described him as an even-tempered individual who counted among his highest priorities in life his family and his work. There is no evidence indicating that he had experienced any cardiac difficulties prior to September 13, 1981.

The critical events commenced around 9:00 or 9:30 p.m. on September 12, 1981, when he left for work. His agreement with the Town of Hulett called for him to work four hours per day, but he usually worked longer hours particularly on Friday and Saturday nights. On this particular night there was a dance at the civic center in Hulett. At the dance at the civic center Darwin Creek saw one of his daughters in the company of an individual whom Creek did not then know but whom he perceived to be disreputable, and apparently he thought the conduct of the individual and his daughter at the dance was inappropriate.

Later in the evening, about 11:30 p.m., he was called to a disturbance in a bar. The individual who was accompanying Darwin Creek's daughter was hollering and making an excessive amount of noise in the bar. Creek warned him to desist from this activity, but the warning was not heeded, and instead, immediately after Creek left the bar, the individual reinstituted his noisy activities. Creek then returned to the bar, asked the individual to accompany him outside, and at that time threatened him with arrest if he did not discontinue the objectionable noisemaking.

Witnesses quoted Darwin Creek as saying he felt something come over him after this last confrontation as he went from the bar to the car. Sometime later he concluded to end his evening's work, and he arrived at his home about 2:30 a.m. Again witnesses quoted Darwin Creek as saying that the pain hit him about half way from town to

his home, which was some eleven miles from Hulett and about a fifteen to twenty minute drive.

Darwin Creek's wife testified that he had a disturbance call about every Saturday night or Friday night at one of the bars. Other witnesses testified that quelling disturbances was a part of the employment activities of a police officer, and that such incidents were not unusual or abnormal.

The primary expert witness on behalf of the claimants testified that in his opinion law enforcement is the most stressful occupation that can be found. He stated his opinion that in some ways what Darwin Creek faced on the night on which he died was typical and that in other aspects it was not. This witness defined stress as the body's response to a perceived threat. He further stated that threats are idiosyncratically defined, apparently intending that they are peculiar to the individual. This witness went on to say that in his opinion the stress level that Darwin Creek suffered that night was definitely excessive and abnormal, although he conceded that in his work as a police department psychologist he had frequently encountered police officer stress based upon how members of the officer's family appeared in public. In explaining his opinion that the stress level was definitely excessive and abnormal, he testified that the areas of primary concern were the fact that Darwin Creek had to return to the same bar to deal with the same individual; that his daughter was present; and that he saw his daughter leaving the bar on a motorcycle with someone he felt to be intoxicated. Other testimony indicates that this last factor was a conjectural matter based upon the daughter's testimony that when she and her escort left the bar she had seen the patrol car and believed that her father was in it. The expert witness emphasized that the stress involved a concept which he called role conflict which emanated from the duty of Darwin Creek to handle the disturbance as a law enforcement officer while at the same time acting responsibly as a parent so far as his daughter's interests were concerned.

In his remarks at the close of the evidence the trial judge stated that in his opinion the event in question did not exceed the normal and usual tasks of Darwin Creek as a law enforcement officer. He stated that his conclusion was that this was not an unusual or abnormal stress period for this peace officer but instead he found that it was the usual and normal thing expected of a peace officer in the Town of Hulett. Thereafter the district court entered its Order containing Findings of Fact and Conclusions of Law pursuant to which the court ordered that the application for worker's compensation benefits be denied.

In her appeal from the order of the district court the appellant states the issues to be:

"1. Did the trial court by refusing to accept uncontroverted, unimpeached testimony, reach a decision in this case that was against the clear weight of the evidence?

"2. Did the trial court deny benefits based on an elevated standard of unusualness or abnormality that is not required by the plain language of W.S. § 27–12–603(b)?"

The appellees' brief would phrase the issue in this way:

"WAS THE EVIDENCE BEFORE THE DISTRICT COURT SUFFICIENT TO ESTABLISH A PERIOD OF EMPLOYMENT STRESS CLEARLY UNUSUAL TO, OR ABNORMAL FOR, THE CLAIMANT–DECEDENT, AS REQUIRED BY SECTION 27–12–603(b), W.S. 1977?"

We conclude that the correct response to each statement of the issues is a negative answer, and that the decision of the district court should be affirmed.

No question is raised as to the inclusion of a myocardial infarction within the definition of injury found in § 27–12–102(a)(xii), W.S.1977, and we take it to be settled as the law in Wyoming that cardiac conditions can be injuries within that definition. The issue here posed arises within the provisions of § 27–12–603(b), W.S.1977, which provides as follows:

"(b) Benefits for employment-related coronary conditions except those directly and solely caused by an injury or disease are not payable unless the employee establishes by competent medical authority that there is a direct causal connection between the condition under which the work was performed and the cardiac condition, and then only if the causative exertion occurs during the actual period of employment stress clearly unusual to, or abnormal for, employees in that particular employment, and further that the acute symptoms of the cardiac condition are clearly manifested not later than four (4) hours after the alleged causative exertion."

This court summarized the requirements imposed upon a claimant by this statute in coronary condition cases as follows in *State ex rel. Worker's Compensation Division v. McCarley*, Wyo., 590 P.2d 1333, 1335–1336 (1979):

"(1) The claimant must establish a period of employment stress unusual or abnormal for employees in claimant's occupations;

"(2) Claimant must show that he or she engaged in some exertion during the period of unusual or abnormal employment stress;

"(3) Claimant must establish by competent medical evidence a direct causal connection between such exertion and the myocardial infarction; and

"(4) Claimant must show that the acute symptoms of the cardiac difficulty were clearly manifested within four hours after the alleged causative exertion."

The parties here agree that the appellant met her burden at the trial of this case, by proof or by stipulation, with respect to the second, third and fourth requirements. The district court so determined in its Conclusions of Law in the following language:

"2. The decedent did engage in exertion during a period of employment stress.

"3. From the testimony of the medical doctor the court finds that there was a direct causal connection between the condition under which the work was performed and the cardiac condition.

"4. The court finds that the acute symptoms of the cardiac condition were clearly manifested within four hours after the alleged causative exertion."

The question then to be addressed is whether the appellant did establish a period of employment stress unusual or abnormal for employees in the occupation of appellant's decedent. While the language of the statute has been adjusted and the period within which acute symptoms must manifest themselves has been lengthened, the construction given to this statute by the court in *Mor, Inc. v. Haverlock,* Wyo., 566 P.2d 219 (1977), still is applicable. There the court said at 566 P.2d 222:

"Whether the exertion of work was clearly unusual to, or abnormal for, the individual worker in his particular employment is a question of fact to be determined by the trial court, and its findings will be upheld where supported by substantial competent evidence. [Citations.] It should be emphasized, however, that the exertion in question must only be unusual *to the employee*—it need not necessarily be unusual to others engaged in the same employment. [Citations.] To sustain his burden of proof, as to legal causation, the statute requires that the employee show that the causative exertion was clearly something beyond his normal routine—something more than the worker's usual work."

In applying the unusual exertion rule in Wyoming we discover a dichotomization of factual situations, which must be considered in turn in resolving this case. We first of all identify those situations in which the actual work activities were different in kind or greater in degree than those normally required of the employee. *Mor, Inc. v. Haverlock,* supra, and *Jim's Water Service v. Eayrs,* Wyo., 590 P.2d 1346 (1979), are examples of such cases. We emphasize that in examining such situations we look at the activities which are usual for the particular employee, and note that this is the rule in other jurisdictions which have adopted the unusual exertion rule even though the statutory requirements are different. *City and County of Denver v. Industrial Commission,* 195 Colo. 431, 579 P.2d 80 (1978); *Chapman v. Wilkenson Co.,* 222 Kan. 722, 567 P.2d 888 (1977); *Herbert v. Sharp Brothers Contracting Company,* Mo. App., 467 S.W.2d 105 (1971); and *Hamilton v. Procon,* 434 Pa. 90, 252 A.2d 601 (1969).

We then have the second category of cases in which the work activities are neither different in kind nor degree, but in which we have held the work activities to be deemed unusual or abnormal exertion by virtue of the condition of the workman. In *Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division v. Schwilke,* Wyo., 649 P.2d 218 (1982), and *Yost v. Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division,* Wyo., 654 P.2d 137 (1982), this court held that the existence of employment stress clearly unusual to or abnormal for the employee was present because the particular employee was suffering from a prior cardiac problem. In essence, we have said that the stress became unusual or abnormal not because of a difference in the work activities but because of a difference in the employee. The thrust of our application of the unusual exertion rule leads to the conclusion that the award of worker's compensation benefits results because at the time of the critical event the employee was different as compared to his prior and usual condition.

As we previously have noted we are dealing with a question of fact. *Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division v. Schwilke,* supra; *Jim's Water Service v. Eayrs,* supra; and *Mor, Inc. v. Haverlock,* supra. Other jurisdictions have considered the question raised to be an issue of fact in specific instances involving a policeman or other law enforcement officer and the necessity of demonstrating an unusual exertion or job situation. *City and County of Denver v. Industrial Commission,* supra; *Hall v. City of Hugoton,* 2 Kan.App.2d 728, 587 P.2d 927 (1978); *Sokness v. City of Virginia,* 231 Minn. 215, 42 N.W.2d 551 (1950); *Shea v. Board of Trustees, Police & Firemen's*

*Retirement System, Division of Pensions,* 116 N.J.Super. 348, 282 A.2d 415 (1971); *Borough of Aliquippa v. Workmen's Compensation Appeal Board,* 18 Pa.Cmwlth. 340, 336 A.2d 450 (1975); and *Walker v. City of Columbia,* 247 S.C. 241, 146 S.E.2d 856 (1966).

■ In this case, in its Conclusion of Law Number 5, the district court stated as follows:

"5. In the court's opinion we do not have stress in excess of that caused by the normal and usual tasks of the employee. The court does not feel that the facts showed an unusual or abnormal stress period for this peace officer. The court finds that this was the usual thing expected of a police officer in the town of Hulett."

It is our conclusion that by this language the district court rejected both possibilities for the application of the unusual exertion rule, i.e., there was nothing different about the work activities, and there was nothing different about the employee.

The appellant urges upon the court, however, the proposition that the district court reached its conclusion by refusing to accept the uncontroverted and unimpeached testimony of the expert witness. The appellant relies upon the following language from *Douglas Reservoirs Water Users Association v. Cross,* Wyo., 569 P.2d 1280, 1284–1285 (1977):

"While the trier of fact should be accorded considerable freedom in evaluating the testimony of witnesses, uncontradicted and unimpeached testimony cannot be arbitrarily disregarded. A litigant is entitled to assume unattacked evidence, properly presented, will receive consideration. * * * " 1

The appellant's argument is that the testimony throughout the entire trial uniformly leads to a conclusion that Darwin Creek was subjected to a period of unusual or abnormal employment stress while on his job the night before he suffered the fatal heart attack.

■ The testimony in this record may be subject to varying interpretations, but we will not usurp the function of the trial court in making factual findings with respect to this case. It is the duty of the trier of fact to weigh and evaluate the testimony of the witnesses, including that given by experts. *Mitchell y. Vondra,* Wyo., 448 P.2d 313 (1968). Recognizing the rule relied upon by the appellant, "The trial court was not in a strait jacket which required it to accept without question any of the testimony as to fact. It was the sole judge of the credibility of the witnesses and was entitled to interpret the evidence." *Ward v. Yoder,* Wyo., 355 P.2d 371, 374 (1960). From what we have said heretofore we conclude that there is no reason in this case to accept the argument that testimony was arbitrarily disregarded. The trial court only adopted a different but appropriate interpretation of the evidence. Under those circumstances this court should not invade the province of the trier of fact by reaching a different conclusion.

We wish to add that we, like the trial court, have a good deal of sympathy for law enforcement personnel who do their work under incredible stress.[2] This sympathy, however, does not permit the court to construe the language of the statute to extend the benefits of worker's compensation to those who do not reasonably fall within the language used by the legislature. *Mor, Inc. v. Haverlock,* supra. This case reflects a most unfortunate and regrettable occurrence, and one which the trial court found causally was connected to the police officer's employment. Still it is not one for which, under our law, the benefits of worker's compensation are available. Perhaps it

1. For similar holdings see *Ward v. Yoder,* Wyo., 355 P.2d 371, reh. denied 357 P.2d 180 (1960); *Twing v. Schott,* 80 Wyo. 100, 338 P.2d 839 (1959); and *Beck v. Givens,* 77 Wyo. 176, 309 P.2d 715, reh. denied 77 Wyo. 776, 313 P.2d 977 (1957).

2. Perhaps in recognition of this fact several states have enacted special legislation for policemen who suffer heart attacks. See 1B Larson, Workmen's Compensation Law, § 41.70 (1980).

would be appropriate for the legislature to adopt a special statute for law enforcement officers who suffer from cardiac conditions, or alternatively to invoke in our worker's compensation statute only a causal connection test. The legislature must decide whether this state should adopt either of those measures.

The judgment of the trial court is affirmed.

ROONEY, Chief Justice, specially concurring with whom RAPER, Justice, joins.

In concurring with the majority in this case, I maintain the position taken by me in *Yost v. Wyoming State Treasurer ex rel. Wyoming Worker's Compensation Division*, Wyo., 654 P.2d 137 (1982), to the effect that § 27–12–603(b) requires the causative exertion to be "clearly unusual to, or abnormal for, employees in that particular employment," and that it does not authorize recovery when the exertion is only unusual to, or abnormal for, the particular employee.