STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellant (Petitioner),

v.

Hobart BRUHN, surviving spouse of Susan K. Bruhn, individually and on behalf of Corey Lynn Wittenhagen, minor child, Appellee (Respondent).

No. 97–98.

Supreme Court of Wyoming.

Dec. 24, 1997.

William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Assistant Attorney General, for Appellant.

C. John Cotton of Cotton Law Offices, Gillette, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN & LEHMAN, JJ.

MACY, Justice.

Appellant State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division (the division) sought judicial review of the hearing examiner's decision to award worker's compensation death benefits to the survivors of Susan Bruhn (the employee). The district court certified the case to this Court pursuant to W.R.A.P. 12.09(b).

We reverse the hearing examiner's decision.

## ISSUES

The division seeks our review of the following issue:

A. Was the Hearing Examiner's award of death benefits arbitrary, capricious, an abuse of discretion, and contrary to law, where the fatal injury was not an "injury" and was not proximately caused by an "injury["?]

## FACTS

On March 18, 1996, the employee, who had been in Rapid City, South Dakota, for a doctor's appointment, was returning to her home in Gillette when, at about 5:10 p.m., her vehicle skidded on ice and traveled into the ditch. The employee was ejected, and her vehicle rolled over her. She died as a result of the injuries which she sustained in the accident.

The hearing examiner relied upon the following facts, which were stipulated to by the parties, in rendering his findings of fact and conclusions of law:

1. The parties have stipulated to the following facts:

(1) [The employee], now deceased, sustained a compensable injury on or about January 25, 1991, while employed by Pamida Discount Store.

(2) On March 18, 1996, [the employee] had an appointment to be seen and evaluated by Steven K. Hata, M.D., in Rapid City, South Dakota, in connection with treatment and care required for the January 1991, injury. . . .

(3) [The employee] died as a result of an automobile accident which occurred during the early evening hours of March 18, 1996. The March 18, 1996, automobile accident occurred following [the employee's] appointment with Dr. Hata in Rapid City[,] South Dakota, and during [the employee's] return trip to Gillette, Wyoming, from her appointment with Dr. Hata.

(4) Hobart Dean Bruhn[ ] is the Surviving Spouse of [the employee].

(5) Cory Lynn Wittenhagen[ ] is a Surviving minor child of [the employee]. Ms. Wittenhagen's date of birth was May 9, 1978, and she was 17 years of age at the time of the injury.

Ms. Wittenhagen turned 18 years old on May 9, 1996.

(6) Prior to her death, [the employee] had been awarded a Permanent Partial Impairment Award of 34% or $23,101.98. At the time of death, $9,965.56 remained to be paid out of this award.

(7) The Division has paid Hobart Bruhn an amount equal to the $9965.56 which remained to be paid to [the employee] at the time of her death. This was accepted by Mr. Bruhn as a "partial payment" on survivor's benefits payable pursuant to W.S. § 27–14–403(e).

(8) In the event of an award in favor of Mr. Bruhn for benefits pursuant to W.S. § 27–14–403(e), the amount due and payable to Mr. Bruhn will be reduced by the amount previously paid as set forth in the preceding paragraph.

(End of Stipulation.)

2. The Office further finds that [the employee] was not employed at Pamida at the time of her death, and that the Pamida store in Gillette went out of business months prior to the date of her death.

3. The Office further finds that [the employee] was referred to Dr. Hata (a neurologist in Rapid City) by Dr. Sontag (a chiropractor in Gillette), that there are no neurologists practicing in Gillette, that the appointment with Dr. Hata was at 4:00 p.m., that [the employee] drove over earlier in the day for an MRI session, that the neurologist's appointment was late in the day so that Dr. Hata would have a chance to review the MRI report prior to seeing [the employee], that [the employee] proceeded home directly after the appointment, that the vehicle rolled at about 5:10 p.m. while she was driving home to Gillette, that there is no evidence of speeding or reckless driving, and that there was no evidence of diverting on a frolic or personal errand not related to the physician's appointment.

. . . .

5. The Office further finds that apparently [the employee] was driving without wearing her seat belt, but there is no evidence in the record to state whether that fact was causally related to her fatal injuries. In other words, it would be speculative to conclude that the failure to wear her seat belt caused her death, or to conclude that she would not have been injured had she been wearing her seat belt.

. . . .

## CONCLUSIONS OF LAW

. . . .

2. The Division contends that benefits are awardable only for injuries that occur within the course and scope of employment and that this fatal injury did not occur under such circumstances. This argument was made and noted for the record, but the Office finds that the claim is made under W.S. 27–14–403(e) for benefits "if an injured employee dies as a result of the work related injury . . . ["] Under that statute it is not necessary to determine whether the fatal injury, even if it is a second injury, occurred in the course and scope of employment, but rather, it is necessary to determine whether the injured employee (already injured by a work related injury) died *as a result* of the work related injury.

. . . .

6. The parties generally agreed that the phrase "as a result of" is invested with a burden upon the claimant to show that the work related injury was causally related to the death. Mr. Lesley contended that it was necessary to show that the work injury was the proximate cause of the death, without any intervening or superseding causes. Mr. Cotton urges a broad view of causation.

. . . .

12. This case involves a chain of causation that is stronger than a mere "but for" line of analysis. [The employee] needed to see Dr. Hata for treatment of her compensable work-related injury, she needed to travel and she was paid for the travel. There is no evidence of a diversion or frolic or side trip, nor of negligence in driving her vehicle. The linkage between the compensable injury and the travel is direct and unbroken.

. . . .

15. This is a close question. Both counsel have provided thorough and incisive analysis. This case presents a legal dispute, not so much a factual dispute. On balance, the Office concludes that the language "as a result of" is broader than the concept of "proximate cause[."] The Legislature chose this language for a reason, and that reason must be because death benefits were not intended to be restricted only to the families of those whose deaths were *immediately, solely, primarily or proximately* caused by industrial *accidents*. If the Legislature had intended to be so restrictive, the language it used would have stated that intent.

(Footnote and citations omitted.) The hearing examiner awarded death benefits to the surviving spouse and minor child pursuant to WYO. STAT. § 27–14–403(d) (Supp.1996) (amended 1996) and (e) (1997). The division petitioned the district court, asking it to reverse the hearing examiner's decision. The district court certified the case to this Court pursuant to W.R.A.P. 12.09(b).

## STANDARD OF REVIEW

W.R.A.P. 12.09(a) limits judicial review of administrative decisions to a determination of the matters which are specified in WYO. STAT. § 16–3–114(c) (1997). Section 16–3–114(c) provides in pertinent part:

(c).... The reviewing court shall:

...

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law[.]

## DISCUSSION

The division contends that the hearing examiner's order was arbitrary, capricious, an abuse of discretion, and contrary to law, arguing that it misapplied the plain meaning of the Wyoming Worker's Compensation Act.

In order to resolve this issue, we must interpret the language of the relevant statutes.

We endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making an " 'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.' " *Parker Land and Cattle Company v. Wyoming Game and Fish Commission*, 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker*, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia*. *State Department of Revenue and Taxation v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo. 1994). "When the Court determines, as a matter of law, that a statute is clear and unambiguous, it must give effect to the plain language of the statute and should not resort to the rules of statutory construction." *Lancto v. City of Rawlins*, 892 P.2d 800, 802–03 (Wyo.1995). If, on the other hand, the Court determines that a statute is ambiguous, it may use extrinsic aids of statutory interpretation to help it determine the legislature's intent. *Newton v. State ex rel. Wyoming Workers' Compensation Division*, 922 P.2d 863, 865 (Wyo.1996).

WYO. STAT. § 27–14–102(a)(xi) (1997) defines a compensable injury:

(xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, *arising out of and in the course of employment* while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

(Emphasis added.) The statutory language of § 27–14–102(a)(xi) is clear and unambiguous. An injury is received "in the course of employment" when it occurs while the employee is performing the duties for which she was hired. *Kiger v. Idaho Corporation*, 85 Idaho 424, 380 P.2d 208, 210 (1963). An injury "aris[es] out of" the employment when a causal connection exists between the injury

and the conditions under which the work is required to be performed. *Id.* Under these guidelines, " 'if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment.' " *Id.* (quoting *Eriksen v. Nez Perce County,* 72 Idaho 1, 235 P.2d 736, 738–39 (1951)). An injury is not compensable if it cannot fairly be traced to the employment as a contributing cause and if it comes from a hazard that the employee would have been equally exposed to outside of the employment. 380 P.2d at 210–11.

The hearing examiner opined that this case hinged upon how § 27–14–403(e) is interpreted. That provision sets out the benefits which are available for a deceased employee's survivors "[i]f an injured employee dies *as a result of* the work related injury." (Emphasis added.) The hearing examiner determined that, if the legislature had intended for the work related injury to be the sole or primary cause of an employee's death, it would have included those words in the statute. He concluded that, since the statute does not contain words to that effect, the legislature must have intended for death to be compensable as long as the death can be linked to the injury.

■■■ We disagree with the hearing examiner's interpretation of the statute. We read the statute to say that, in order for death to be compensable, the initial injury must be the direct cause of the employee's death. If the legislature had intended for a broader causation test to be applied, it would have defined what that test is instead of leaving it up to us to decipher.

[T]he purpose of the workmen's compensation laws is to spread the risk of injury inherent in a job, over the whole industry so that the cost of medical attention and loss of wages will be passed on by inclusion in the price of the product or service being sold by the employer, instead of having to be borne by the unfortunate individual who suffers the injury.

*Whitington v. Industrial Commission,* 105 Ariz. 567, 468 P.2d 926, 928 (1970).

As the division points out, it would be impossible to ever cut off compensability if we were to adopt the hearing examiner's interpretation of the causation requirement. Would we compensate an employee who wrecked her car and died because she fell asleep at the wheel while she was on her way to see her doctor? Would we compensate an employee who was killed by a drunk driver while she was on her way home from her doctor's appointment? A logical end would not exist to the causation test which the hearing examiner proposes. Furthermore, it would lead to too many abuses, and the worker's compensation fund would, in effect, become a general health and accident insurance fund, a purpose for which it was not intended.[1]

■■■ A causal connection does not exist between the employee's initial injury and her car accident. The fact that she was returning from a doctor's appointment for an injury which she sustained while she was working at the Pamida Discount Store does not translate to a finding that the injury caused her death. Certainly, the accident which caused the employee's death did not occur because of her work related back injury. The accident was not a hazard of her

1. By way of dicta, we discussed the "quasi-course of employment" analysis in *Bearden v. State ex rel. Wyoming Workers' Compensation Division,* 868 P.2d 268 (Wyo.1994). Under this theory, injuries are compensable if they arise out of the following "quasi-course" activities:

"activities undertaken by the employee following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable

activities that would not have been undertaken but for the compensable injury. 'Reasonable' at this point relates not to the method used, but to the category of activity itself."
868 P.2d at 270 (quoting 1 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 13.11(d) at 3–542 (1993)). Given our interpretation of § 27–14–403(e), we expressly reject the "quasi-course of employment" theory of recovery. We instead hold that, in order for a second injury to be compensable, the original compensable injury must itself be the direct cause of the subsequent injury.

employment that she would not have been subjected to apart from her job nor did it result from a risk reasonably incident to the character of the business. Rather, the accident resulted from a hazard that we are all equally exposed to—bad road conditions. Accordingly, we conclude that the hearing examiner's award of worker's compensation death benefits to the survivors of the employee was not in accordance with the Wyoming Worker's Compensation Act.

The hearing examiner's decision is reversed.