In the Matter of the Worker's Compensation Claim of Margie Marie GONZALES, Appellant (Employee–Petitioner),

v.

STATE of Wyoming ex rel. WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Objector–Respondent).

No. 98–159.

Supreme Court of Wyoming.

Dec. 30, 1998.

Robert A. Nicholas of Nicholas Law Office, LLC, Riverton, Wyoming, representing Appellant.

John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Assistant Attorney General, representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

MACY, Justice.

Appellant Margie Marie Gonzales (the employee) appeals from the district court's order affirming the Office of Administrative Hearings' denial of worker's compensation benefits.

We affirm.

## ISSUES

The employee presents the following issues for our review:

1. Is Ms. Gonzales' thoracic condition directly related to her 1993 work injury?

2. Was the decision of the Hearing Examiner arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence?

3. Does the Hearing Examiner's decision fail to address the ultimate issue raised by the objection [to] the Final Determination?

4. Does the Hearing Examiner's Order set out sufficient findings of fact and conclusions of law?

5. Was the decision unsupported by substantial evidence?

## FACTS

The employee was injured on October 18, 1993, while she was working as a certified nurse's assistant at the Wind River Healthcare and Rehabilitation Center. She was moving a patient when she felt a sharp pain in her neck, a burning sensation in her right shoulder, and numbness and tingling down her right arm. She filed an injury report claiming that she injured her "[r]ight upper back." She received benefits from the Division of Workers' Safety and Compensation (the division) for pain related to her neck.

The employee consulted with Michael Pryor, M.D. in January of 1994, to whom she reported pain in her cervical spine and shoulder. He reviewed her cervical spine films, which were normal. He was unable to identify a neurologic deficit and diagnosed fibromyalgia.[1] She was seen by Peter Crane, M.D., a neurologist, on October 13, 1994. He found that the cause of her right shoulder and arm pain was uncertain.

Michael J. Ford, M.D., an orthopedic surgeon, first saw the employee on November 27, 1995, for an independent medical examination and impairment rating. He reported that the x-ray of the thoracic spine and chest was normal and requested an MRI, which also came back normal. Dr. Ford gave the employee a four percent whole person impairment rating for her cervical spine injury but concluded that she was not entitled to a thoracic spine impairment rating because she had no limitation of her range of motion in that part of her back.

The employee first visited Kenneth A. Pettine, M.D., an orthopedic surgeon, in January of 1996. In his deposition, Dr. Pettine stated that her examination showed no evidence of neurologic findings and that her neck appeared to be normal. He noted that she had pain and decreased range of motion in her thoracic area. After ordering a discogram, Dr. Pettine diagnosed a disk tear in her thoracic spine, specifically at T9–T10. The employee told Dr. Pettine that her pain stemmed from her 1993 work-related injury, and he concluded that her chronic, incapacitating back pain in the thoracic region was directly related to her work-related injury.

Anne M. MacGuire, M.D., a rheumatologist, saw the employee on March 12, 1996, to give an opinion concerning the employee's current medical condition, a diagnosis, a rec-

---

* Retired November 2, 1998.

1. Fibromyalgia syndrome is a widespread musculoskeletal pain and fatigue disorder.

ommended treatment plan, and an opinion as to whether her problems were related to her October 1993 injury. The doctor examined the employee and reported:

> Her complaints of discomfort are truly in the thoracic spine, not her neck. When examined, she had an .extremely positive withdrawal reaction. When one would just touch her skin, she would flinch, flex her back and jerk away very suddenly. This type of reaction would be unusual in some-one who truly had a significant disc injury as they would not want to move this fast, and, typically, just touching the skin does not evoke any significant pain responses in a truly serious disc injury.

Dr. MacGuire found that the employee's symptoms were inconsistent with a thoracic spine injury but, nevertheless, gave the employee a five percent whole person impairment rating.

Dr. Ford saw the employee again on February 3, 1997. At that point in time, he reported that "this patient's symptoms seem to be way out of proportion to any objective findings" and "there seems to be a lot of functional overlay."[2] He was unable to say that her condition was work related.

The division had Robert G. Weiner, M.D., an orthopedic surgeon, conduct an independent medical examination on May 25, 1996. In his medical report, Dr. Weiner concluded that the thoracic condition the employee was complaining about was not related to the October 18, 1993, injury:

> Any pathology from the annular tear of T9–T10 can in no way ·explain all of the examinee's symptoms or clinical findings. Ruptured thoracic disks are extremely rare, and certainly could not be explained by the mechanism of injury that the examinee describes as occurring on 10/18/93. The description of the injury being the turning of the examinee, resulting in a stabbing pain in the right side of her neck with a burning sensation in the right shoul-

der and right arm, can in no way be explained by pathology at the T9–T10 level.

> . . . .

> ... I do not feel that she suffered a tear of the annulus at T9–T10 on 10/18/93, and I do not feel that the pathology demonstrated at that level by Dr. Pettine is Workers · Compensation in nature.

The division issued a final determination on June 5, 1996, which discontinued benefits for the employee's thoracic back condition.[3]

The employee objected to the division's final determination and requested a hearing. A hearing was held before the Office of Administrative Hearings on February 6, 1997. At the hearing, the employee testified that the pain had not "moved" from her neck to her back but had gotten gradually more intense. When confronted with her early medical records that described only neck pain, however, she conceded that she had not immediately reported her back pain to her doctors because she did not want to have to quit working.

Dr. Weiner, the only examining physician to testify at the hearing, stated that the T9–T10 problem was a degenerative condition, which probably had been asymptomatic for many years. He opined that, on the basis of a reasonable medical probability, the work incident did not cause a thoracic spine injury. He testified that, had the employee suffered a thoracic injury, she would have experienced immediate stabbing pain in the mid-thoracic area followed by a dull persistent aching pain that was fairly unresponsive to any activity or change of position. He believed that her condition was due more to an emotional problem rather than to organic pathology. In response to a question from the hearing examiner on this point, Dr. Weiner gave the following analogy:

> If you go out and you see that overnight your rear tire of your car has become flat, you would not also expect your headlights to have failed, your windshield to be broken, and your seats to no longer move

---

2. Robert G. Weiner, M.D. testified that the term functional overlay means that subjective complaints seem to be more exacerbated or not compatible with what one would find purely objective.

3. It is difficult to determine when and why benefits for the thoracic condition were given, but apparently they were awarded sometime after the benefits for her neck injury were awarded.

back and forth. You would expect to find, when you examine a patient, the subjective and objective findings to be consistent with the organic pathology, if such organic pathology is found.

With a thoracic disk, you expect certain symptoms to exist to a certain degree. They may vary from patient to patient, but they are within a certain parameter. When somebody's symptoms are well outside that parameter, you begin to question whether what you're dealing with is true pathology or whether it's going to explain all of the patient's symptoms. No more than a flat tire can explain why your headlights don't work, a patient's thoracic disk will not explain neck pain, and pain radiating into the patient's hand and arm.

Secondly, thoracic disk pathology will not cause hypersensitivity to light touch of the thoracic spine. That finding is inconsistent or is not part of the symptomatic thoracic disk symptomatology syndrome.

He also explained why he did not think that the employee was entitled to an impairment rating for chronic pain:

Q Was there anything that you felt that you saw in this patient that either suggested to you she should not have an impairment rating under Chapter 15 or she should have a pain impairment rating?

A It is my feeling that Chapter 15, basing a patient's impairment on pain, is when that pain has a proven objective etiology. Because then you cannot—and the book requires you, as much as possible, to use that objective finding to give the rating, rather than base it on pain, because pain is so subjective.

There are certain syndromes, one is a thalamic infarct in the brain which will give a person intractable pain, which pathology being fairly minimal, sometimes difficult to prove, but the symptoms are fairly classical. When the patient demonstrates findings on physical examination, that I consider incompatible with any proven or known pathology, then it is my feeling that I cannot base any impairment rating on the subjective complaint of pain. And, therefore, I will not use Chapter—

that chapter, in giving an impairment based on the pain.

The hearing examiner denied the claim for medical benefits for treatment of the employee's T9–T10 thoracic disk and denied her claim for a permanent partial impairment benefits rating under Chapter 15 of the AMA GUIDE TO THE EVALUATION OF PERMANENT IMPAIRMENT (4th ed.). The employee sought review of the hearing examiner's order in the district court. After briefing and an untranscribed oral argument, the district court affirmed the hearing examiner's decision. The employee appeals to this Court.

### STANDARD OF REVIEW

When we review a decision in a worker's compensation case, we do not accord deference to the district court's decision. *Cabral v. Caspar Building Systems, Inc.*, 920 P.2d 268, 269 (Wyo.1996). Instead, we review the case as if it had come directly to this Court from the agency. *Id.* Judicial review of an agency's action is governed by WYO. STAT. ANN. § 16–3–114(c) (Michie 1997). W.R.A.P. 12.09(a).

Whether or not an employee's injury occurred in the course of his employment is a question of fact. *DeWall v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 960 P.2d 502, 503 (Wyo. 1998). We review an administrative agency's findings of fact by applying the substantial evidence standard. *Id.* The burden to demonstrate that the agency's findings and conclusions are not supported by substantial evidence is on the appellant. *Mekss v. Wyoming Girls' School*, 813 P.2d 185, 201 (Wyo. 1991), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992). Our task is to examine the entire record to determine whether substantial evidence supported the hearing examiner's findings. *DeWall*, 960 P.2d at 503. We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. *Id.* Substantial evidence is relevant evidence that a reasonable mind may accept in support of the agency's conclusions. *Id.*

## DISCUSSION

### A. Substantial Evidence

■ The employee complains that the hearing examiner's decision to deny benefits for her thoracic condition was arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. Weighing the evidence and assessing the credibility of the witnesses are tasks performed by the hearing examiner, not by an appellate court:

> The testimony in this record may be subject to varying interpretations, but we will not usurp the function of the [trier of fact] in making factual findings with respect to this case. It is the duty of the trier of fact to weigh and evaluate the testimony of the witnesses, including that given by experts.... "The [trier of fact] ... was the sole judge of the credibility of the witnesses and was entitled to interpret the evidence."

*Creek v. Town of Hulett,* 657 P.2d 353, 357 (Wyo.1983) (quoting *Ward v. Yoder,* 355 P.2d 371, 374 (Wyo.1960)). *See also Goddard v. Colonel Bozeman's Restaurant,* 914 P.2d 1233, 1237–38 (Wyo.1996). We will not disturb the hearing examiner's decision unless it is "clearly contrary to the overwhelming weight of the evidence on record." *Nellis v. Wyoming Department of Transportation,* 932 P.2d 741, 743 (Wyo.1997).

■ Wyo. Stat. Ann. § 27–14–102(a)(xi) (Michie Supp.1998) defines a compensable injury:

> (xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, ***arising out of and in the course of employment*** while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

(Emphasis added.) An injury is received "in the course of employment" when it occurs while the employee is performing the duties for which she was hired. *State ex rel. Wyoming Workers' Safety and Compensation Division v. Bruhn,* 951 P.2d 373, 376 (Wyo. 1997). An injury "aris[es] out of" the employment when a causal connection exists between the injury and the conditions under which the work is required to be performed. 951 P.2d at 376–77.

■ The evidence in this case indicated that a thoracic disk injury would cause certain symptoms to exist within a certain parameter. Such an injury would cause a person to feel immediate pain in the mid-thoracic area followed by a dull persistent aching pain. It would not explain the symptoms that the employee claims she suffers from such as hypersensitivity to light touch. The hearing examiner agreed with the physicians who felt that the employee's symptoms came from an emotional condition rather than from a work-related physical injury because her symptoms were totally inconsistent with a thoracic spine injury. We hold that substantial evidence supported the hearing examiner's decision.

### B. Findings of Fact and Conclusions of Law

■ The employee asserts that the hearing examiner's findings of fact were cryptic, incomplete, and incorrect. Our law requires the findings of fact and conclusions of law made by an agency to be done with a degree of detail. *Mekss,* 813 P.2d at 201. "A record of material and substantial evidence must be created so that a reviewing court can determine whether such factual development occurred or whether, instead, the agency's actions were based on unwarranted or undeclared assumptions." *Jackson v. State ex rel. Wyoming Workers' Compensation Division,* 786 P.2d 874, 877 (Wyo.1990).

■ The hearing examiner's order included sufficient detail to enable us to determine that he relied upon the following information in making his decision: the employee suffered a work-related neck injury on October 18, 1993; eventually, she began complaining of back pain; Dr. Ford's opinion was given great weight; and, under the AMA GUIDE TO THE EVALUATION OF PERMANENT IMPAIRMENT, the employee was not entitled to a chronic pain impairment rating because

she could not produce objective findings to explain her complaints of pain and she could not establish that the pain was related to her original injury.[4] We hold that the hearing examiner's findings and conclusions were sufficiently specific to enable us to conduct a meaningful review of the final order in accordance with the provisions of § 16–3–114(c).

## C.  All Issues Were Resolved

The employee complains that the hearing examiner failed to address whether her "underlying thoracic condition" was compensable.  She maintains that, because the order denied only her claim for medical benefits for the treatment of her T9–T10 thoracic disk, her claim for benefits for her underlying thoracic condition is unresolved.

■  The record in this case is difficult to work with as it is incomplete and disorganized.  It is, therefore, hard to determine with any degree of precision what the exact issues before the hearing examiner were. Nevertheless, it appears to us that the opinions of the physicians regarding the tear at T9–T10 and the employee's complaints of pain pertained to the overall thoracic condition.  The majority of the physicians did not believe that the tear could create the employee's current symptoms nor could they find anything objective to explain her thoracic pain or to show that she suffered a thoracic injury at all on October 18, 1993.  We conclude that the issues that the hearing examiner resolved disposed of the entire thoracic condition issue.

Affirmed.

---

4.  The hearing examiner did misstate that Dr. MacGuire had expressed a strong opinion about the work relatedness of this injury.  We conclude that this was an oversight on the part of the hearing examiner and that it did not significantly impact his ultimate determination.